(No. 56361.—

JERALD P. MENOZZI, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (PTO Services, Inc., Appellee).

*Opinion filed June 17, 1983.*

Cirricione, Block, Krockey & Cernugel, P.C., of Joliet (Michael D. Block and Michael N. Gorcowski, of counsel), for appellant.

Raymond M. Simard, of Discipio, Martay & Caruso, of Chicago, for appellee.

JUSTICE SIMON delivered the opinion of the court:

This is an appeal from a decision of the circuit court of Will County confirming an Industrial Commission award of workers' compensation benefits to the petitioner, Jerald Menozzi. We must decide whether the circuit court ruled properly in confirming the award instead of remanding the cause to the Industrial Commission.

Jerald Menozzi was a truck driver for PTO Services, Inc., the respondent in this case. His job involved heavy lifting. On March 3, 1978, he slipped off the end of a truck while he was loading it. As he fell he struck the middle portion of his lower back on a piece of angle iron and landed on his right arm. He felt pain in his back and arm which continued with such intensity that he did not return to work. Menozzi consulted several doctors, four of whom submitted reports which appear in the record. PTO paid workers' compensation benefits through April 7, 1979. An arbitrator awarded Menozzi temporary total disability benefits through November 26, 1979, and permanent partial disability benefits based on a loss of 50% of the man as a whole. After receiving two additional medical reports into

evidence, the Industrial Commission ruled that Menozzi's temporary total disability extended only through April 1979, the month in which the employer had stopped benefits, and awarded permanent partial disability based on 15% loss of the use of the right arm and 8% loss of the man as a whole. It ordered payment of $230.05 for 174¾ weeks and set the bond for appeal by PTO at $40,100.

PTO filed a petition for correction of clerical error, alleging that sections 8(e) and 8(d)(2) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, pars. 138.8(e), 138.8(d)(2)) provided for only 75¼ weeks' compensation for a 15% loss of the use of an arm and an 8% loss of the man as a whole. The Industrial Commission made this correction but left the bond at $40,100. Menozzi immediately filed his petition for correction of clerical error, arguing that the amount of the bond no longer bore any relation to the amount of the award and that entry of a 28% rather than an 8% figure for loss of the man as a whole would correct the discrepancy and justify the original award of 174¾ weeks. The Industrial Commission took no action on Menozzi's petition, and he filed a writ of *certiorari* in the circuit court. The court, after postponing its decision twice on Menozzi's request, confirmed the amended award of the Commission and found no clerical error warranting a remand.

Menozzi's position on this appeal is that the Commission's award made sense neither in its original form nor as amended, and that inasmuch as his petition for correction was not acted upon the amount of the award was never finally determined by the Commission and was not ripe for an appeal. He argues that the $40,100 bond is roughly sufficient to guarantee payment of an award of either $40,316.26, the amount that would be due for a 28% loss of the man as a whole and a 15% loss of the use of an arm, or $40,201.24, the amount due on the original award

of $230.05 per week for 174¾ weeks (see Ill. Rev. Stat. 1979, ch. 48, par. 138.19(f)(2)), but is much higher than the amount required to guarantee payment of $17,311.26, the amount owing on the amended award of $230.05 per week for 75¼ weeks. Menozzi agrees with PTO that the original order of the Industrial Commission was in need of correction, but argues that the order subsequently entered by the Commission was also internally inconsistent. His position is that an order reflecting 174¾ or 175¼ weeks' temporary total incapacity would be consistent with the amount of the bond required by the Commission and in accord with the law and the evidence, and that the circuit court should not have entertained the appeal until the Commission had allowed or affirmatively denied his petition to correct the award.

Section 19(f) of the Workers' Compensation Act reads:

"The decision of the Commission acting within its powers, according to the provisions of paragraph (e) of this Section shall, in the absence of fraud, be conclusive unless reviewed as in this paragraph hereinafter provided. However, the Arbitrator or the Commission may on his or its own motion, *or on the motion of either party*, correct any clerical error or errors in computation within 15 days after the date of receipt of any award by such Arbitrator or any decision on review of the Commission and shall have the power to recall the original award on arbitration or decision on review, and issue in lieu thereof such corrected award or decision. Where such correction is made the time for appeal or review herein specified shall begin to run from the date of the receipt of the corrected award or decision." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 48, par. 138.19(f).)

This court has held that "[t]he purpose of section 19(f) is to provide the Commission an opportunity to correct its own clerical or computational errors so as to avoid the necessity of having the circuit court review such errors. *** It is apparent that the statute, when read as a whole, vests con-

tinuing jurisdiction in the Commission to correct its alleged errors and that its decision is not final until the Commission determines whether or not to correct such errors." (*International Harvester v. Industrial Com.* (1978), 71 Ill. 2d 180, 186.) In *International Harvester* this court held, in a divided opinion, that an employer who had filed a petition with the Industrial Commission to correct an error could not seek a writ of *certiorari* until the Commission acted upon the petition. In *Zbilski v. Industrial Com.* (1971), 48 Ill. 2d 131, the Commission notified the parties that it wished to correct its order but never issued a corrected decision because the claimant failed to return his copy of the original decision. This court held that the circuit court was "not in a position to review the decision of the Commission until a final corrected decision" was entered. (48 Ill. 2d 131, 134.) The court in later cases interpreted *Zbilski* as being a jurisdictional holding, standing "for the proposition that jurisdiction will not attach in the circuit court until the Commission renders its *final* decision. This is so whether the Commission ultimately allows or denies the relief requested in a petition to correct errors." (*International Harvester v. Industrial Com.* (1978), 71 Ill. 2d 180, 187; see also *PPG Industries, Inc. v. Industrial Com.* (1982), 91 Ill. 2d 438, 443-44.) We believe that the observations made in those cases apply with equal force here.

PTO cites no cases which hold that the circuit court could properly act in this type of situation, but urges that we adopt the position advanced by the dissents in *International Harvester* that section 19(f) was not designed to create a motion for rehearing procedure at the Industrial Commission level but was intended merely to allow the Commission to correct purely clerical or computational, as opposed to substantive, errors. PTO also argues that if the legislature had intended the result reached by the majority

in *International Harvester* and sought by Menozzi in this case, the word "motion" would have been used in place of the word "correction" in the last sentence of section 19(f). Finally, PTO suggests that Menozzi's petition to correct errors was in essence denied by the Commission's decision, on the day the petition was filed, to make the corrections PTO had urged, and that for that reason the Commission did not have to take any further action for its decision to be considered final.

We reject the first two of these contentions; they have already been settled by this court. Both contentions were advanced in the dissents in *International Harvester* in 1978 and were, apparently, considered and rejected by a majority of this court. The majority's interpretation of section 19(f) as requiring appellants to wait for petitions to correct errors to be acted on, regardless of the technical characterization of the alleged error as "clerical" or "substantive," is apparent from a reading of *International Harvester*: the error urged for correction there was the failure to credit an earlier payment of nonoccupational benefits against an award of benefits under workers' compensation. This court reaffirmed that interpretation of section 19(f) in *PPG Industries, Inc. v. Industrial Com.* (1982), 91 Ill. 2d 438, and again in *Garcia v. Industrial Com.* (1983), 95 Ill. 2d 467. We also note that one of the dissenting justices in *International Harvester* stated that section 19(f) "should not be interpreted so as to further delay the disposition of the claims of injured employees" (*International Harvester v. Industrial Com.* (1978), 71 Ill. 2d 180, 189 (Goldenhersh, J., dissenting)); here, however, we are dealing with a request by such an employee for a clarification of an award, rather than a request by the employer as in *International Harvester*. Moreover, *International Harvester* remains sound as a rule of practice. A party who is convinced that an order of the Industrial Commission con-

tains a substantial error or inconsistency should be allowed to request a correction, as the statute plainly allows him to do. Such corrections serve the purpose of reducing the number of issues that will be urged for review in the courts, and remove the need for having the circuit court perform the trier of fact's job of deciding what the error was or how an inconsistency should be resolved. To permit review to go forward before the Industrial Commission acts on such a request frustrates this purpose; we see no reason why the Industrial Commission should not be required to consider and respond to such requests.

We do not believe that the Commission's correction of its original order to reflect the changes PTO had urged served as a denial, implicit or otherwise, of Menozzi's petition. That petition, as we have noted, had not been filed until the day the Commission granted PTO's petition, and there is nothing in the record to indicate that at the time of its decision the Commission was even aware of Menozzi's position, which was that the error was in the percentage figure for loss of the man as a whole rather than in the number of weeks for which compensation was due. This argument was reinforced by the Commission's failure to change the amount of the bond to reflect a reduced liability, and is not significantly discredited by the slight discrepancy that would exist between the 174¾ weeks' disability in the original award and the 175¼ weeks that would result from the correction Menozzi suggests was proper. We believe that Menozzi's petition raised a legitimate question concerning the findings and intent of the Industrial Commission. The amended order remained confusing, and explanation or clarification of this confusion would have involved no hardship on the Commission or the parties.

Because the Industrial Commission failed to act upon the inquiry raised by Menozzi, we vacate the decision of the

circuit court and remand the cause to the Industrial Commission for action on Menozzi's petition without expressing an opinion as to what that action should be.

*Judgment vacated;*
*cause remanded,*
*with directions.*