ALBERT LUKASIK, Appellant, *v.* THE INDUSTRIAL COMMISSION *et al.* (Associated Truck Lines, Appellee).

First District (Industrial Commission Division)   No. 1—84—0372WC

Opinion filed May 10, 1984.—Rehearing denied July 2, 1984.

Gerald B. Saltzberg, of Fishman & Fishman & Saltzberg, P.C., of Chicago (Sidney Z. Karasik, of counsel), for appellant.

William M. Wippold, of Musschoot, Womack & Galich, of Chicago, for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Claimant, Albert Lukasik, appeals from the judgment of the circuit court of Cook County which confirmed the award of the Industrial Commission. The Commission had set aside an arbitrator's award of temporary total disability and medical expenses for a certain period of time following the accident. Claimant contends that he was totally disabled after the date fixed by the Commission and that the subsequent medical care was necessary.

On December 20, 1978, the 20-year-old claimant, working as a dock man, was struck in the back by a forklift and a cart while loading freight for his employer, Associated Truck Lines, Inc.

Following the accident, the claimant was taken to MacNeal Hospital where X rays revealed no evidence of any fracture or abnormality. Medication for pain was prescribed and claimant returned home and remained in bed for the next three days, noticing pain in his upper and lower back.

Claimant was treated by the employer's doctors from December 22, 1978, to January 16, 1979. He continued to complain of back discomfort and muscle spasms, and was referred to Dr. W. Patrick Smyth, who examined claimant on January 23, 1979. Dr. Smyth reported that claimant had received a "myofascial injury" and had a "significant functional overlay." A physical therapy regimen was advised and claimant was told that no further care was required and that "he could return to work at any time he felt able without any

restriction."

In early February 1979, claimant sought further treatment from his family physician, Dr. Moltier, who referred him to Dr. Thomas Colmey, an orthopedic surgeon. Dr. Colmey, on examination, diagnosed the injury to be a "contusion/sprain of the thoracolumbar spine," prescribed a muscle relaxant, placed claimant on physical therapy treatments of heat, massage, ultrasound and nerve stimulation, advised him to wear a back corset, and concluded claimant was unable to engage in his usual occupation at that time. On March 19, 1979, Dr. Colmey reexamined claimant and concluded that the "clinical picture at this time is becoming one of subjective complaints without objective findings." Dr. Colmey then requested a second opinion from Dr. Marshall Matz and concluded that the patient would be "considered disabled pending receipt of this consultation. The patient is eligible for light work if such is available to him."

Dr. Matz, a neurosurgeon, examined claimant on April 4, 1979, and found no objective abnormalities or neurologic derangement. In his opinion, claimant could return to work following his release by Dr. Colmey. Claimant testified that Dr. Matz released him to return to work.

Dr. Colmey reexamined claimant on April 23, 1979, and again found no objective abnormalities to substantiate claimant's subjective complaints, but recommended a consultation from a pain clinic, if claimant's employer was agreeable. Dr. Colmey concluded that claimant remained eligible for light work, if available. It was at this point that the employer cut off temporary disability.

Claimant testified that he never went to the pain clinic. He also did not return to college, where he had been a student at various times between 1976 and 1978. He stated that in May of 1979, he was told by an unidentified agent of the employer that it would not pay for any further medical treatments. Nevertheless, claimant returned to his family doctor, Dr. Moltier, in May and July of 1979, and continued taking medication four times a day as prescribed by Drs. Moltier and Colmey.

On October 23, 1979, claimant went to the emergency room of Northwest Community Hospital at his own direction, complaining of pain in his upper and lower back radiating to his buttocks and legs. He was given medication and referred to Dr. Bruce Ketel, a neurologist, who admitted him to Lutheran General Hospital on November 1, 1979. An initial physical examination revealed spasm in the lumbrosacral paraspinal muscles, a limited range of motion, and normal reflexes. Claimant was treated with bed rest, lower back traction,

physical therapy, medication, and epidural lumbar injections. An electromyograph (EMG) revealed no abnormalities.

At Dr. Ketel's request, Dr. Per Freitag, an orthopedic surgeon, examined claimant on November 5, 1979, and diagnosed his injury as "muscle spasm secondary to back injury." A myelogram performed on November 16 was interpreted by Dr. Freitag as showing a herniated nucleus pulposus at the L5—S1 level with blunting of the nerve roots.

Dr. Sam Mulopulos, a radiologist at the hospital, found an essentially normal thoracic and lumbar myelogram with questionable defect of the root sheath at the fifth lumbar interspace.

Dr. Ketel's discharge diagnosis of claimant included a "herniated nucleus pulposus at L5—S1 interspace with root involvement" and "thoracic and lumbrosacral muscle spasm and severe pain secondary to back injury." Upon his November 20, 1979, discharge from the hospital, claimant was instructed to continue with physical therapy on an outpatient basis and to follow up with reevaluation by Dr. Freitag.

On January 28, 1980, Dr. Gail Belytschko, a neurologist from Dr. Ketel's office, performed an EMG study on claimant which revealed that the left tibialis anterior muscle was being irritated, which is compatible with a mild L5 radiculopathy.

On February 1, 1980, Dr. Ho Min Lim of Dr. Freitag's office examined claimant and recommended a chymopapain injection. Dr. Lim, finding that claimant could almost touch the floor, basically noted no neurological defects.

Dr. Freitag scheduled claimant for surgery on May 9, 1980. The surgery was canceled when claimant raised enough money to go to Canada for a chymopapain injection by Dr. John McCulloch of Toronto, scheduled for May 22. Upon examination of claimant, Dr. McCulloch and his associate, Dr. R. R. Richards, found some abnormalities but "no clinical evidence of any objective nature" to warrant use of a chymopapin injection. Instead, Dr. McCulloch suggested a "conservative route" of treatment.

Claimant remained inactive and was using strong pain medication. When Dr. Freitag examined claimant on June 2, 1980, he had some lower back muscle spasm and a slightly diminished range of motion. He diagnosed the condition as "most likely *** a so-called slipped intervertebral disk [sic]." In Dr. Freitag's opinion, claimant was not capable at that time of "any type of regular work."

On June 4, 1980, Dr. Freitag readmitted claimant to Lutheran General Hospital. Subsequent lumbar X rays revealed a normal

spine; a myelogram showed slight asymmetry but no gross deformity or obstruction; an EMG showed results compatible with a left L5 radiculopathy, similar to the EMG performed in January 1980; and an epidural venogram revealed no abnormalities.

The hospital records indicate that on June 21, 1980, claimant looked better, was more animated, and was ambulating well, but on June 22, he complained of pain in his left leg. The notes from the morning shift of June 23 show that claimant complained of leg pains, stating that on June 21 he had exercised doing pushups and handstands and may have injured himself. On June 24, claimant told Dr. Belytschko that he did 60 pushups the previous Friday and complained of lower back pain.

The hospital notes through July 11, 1980, show continuing complaints of pain as well as daily requests for pain medication. On July 11, he was taken to Skokie Valley Hospital, where Dr. Narciso Lobo performed a CAT scan which showed "soft tissue 'bulging' obliterating the anterior epidural fat highly suggestive of central disc protrusion." Claimant was discharged from Lutheran General Hospital on June 22, 1980, with a diagnosis of herniated intervertebral disc, L5—S1.

Upon recommendation by Dr. Freitag, claimant returned to Toronto, Canada, to be reexamined by Dr. McCulloch. Dr. McCulloch admitted claimant to a Toronto hospital on August 19, 1980. Based upon the CAT scan as well as a discogram performed by Dr. McCulloch, he diagnosed a central herniation at L5—S1 level and thereafter administered a chymopapain injection to claimant.

Claimant was examined by Dr. Freitag on September 3 and October 21, 1980, at which time his back was found to have marked spasm with limitation in motion. Dr. Freitag suggested to claimant that he submit himself for evaluation and treatment at the Northwestern Pain Clinic, with surgery as his only other alternative.

At the request of respondent, claimant was examined by Dr. George Cooper on November 12, 1980. Dr. Cooper found only "some minimal narrowing of the L5—S1 interspace and a decrease in the normal lumbrosacral angle." He concluded that claimant "certainly could be engaged as a full time student at this time, dispense with the physiotherapy and increase his range of activity." No mention was made of the possibility of claimant returning to work.

Hearings were held before an arbitrator after which the arbitrator awarded 80⁵/₇ weeks of compensation for temporary total disability and $7,148.57 for necessary first aid, medical, surgical and hospital services.

Respondent appealed the decision of the arbitrator to the Industrial Commission. The Commission heard further evidence, and in its decision and opinion on review, it concluded that claimant failed to prove he was totally disabled after April 23, 1979, as a result of the accident of December 20, 1978, or that medical treatment he received after April 23 was necessary to cure or relieve the effects of the accident. Accordingly, it reduced the period of temporary total disability to 17⁵/₇ weeks and disallowed reimbursement of any medical expenses incurred after April 23, 1979.

## I

■ Claimant argues that the decision of the Industrial Commission that he had failed to prove he was totally disabled after April 23, 1979, when Dr. Colmey found no objective symptoms to substantiate claimant's complaints of pain, was against the manifest weight of the evidence. The Commission specifically found that claimant introduced "no medical evidence from his treating doctors, Dr. Moltier and Colmey, to support his contention that he was unable to work ***" and that he "did not seek work during this period" (from the date of his release to work (April 23, 1979) to the date he went to the Northwest Community Hospital emergency room (October 23, 1979)).

It is well settled that, in proving temporary total disability, the employee must show not only that he did not work, but also that he was unable to work. (*Arbuckle v. Industrial Com.* (1965), 32 Ill. 2d 581, 586.) The record reflects conflicting medical opinions as to whether claimant was able to return to work at any given time. As previously noted, Dr. Colmey released claimant for light work as of April 23, 1979; Dr. Matz supported this release. The only evidence presented by claimant to the contrary was the deposition of Dr. Freitag, in which he stated that as of June 2, 1980, claimant was not capable of any type of regular work.

When conflicting medical opinions are presented, the Commission must resolve the conflict. Its decision will not be disturbed on review unless it is against the manifest weight of the evidence. *Childress v. Industrial Com.* (1982), 93 Ill. 2d 144, 147-48; *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462, 468.

In *Brinkmann*, the Commission was presented with two opposing medical opinions about claimant's ability to return to work. The Commission resolved the conflict in favor of the employer, and refused to award claimant additional compensation for temporary total disability. On review, the Illinois Supreme Court, while particu-

larly noting that claimant had not fully recovered from her injury, upheld the Commission's decision that claimant was able to return to work. Therefore, the period of temporary total disability may terminate before the claimant has recovered to the full extent.

Similarly, in the instant case, the Commission was faced with conflicting medical opinions about claimant's ability to return to work. It specifically relied upon the opinions of Drs. Colmey and Matz, to whom claimant was referred by his own family physician. While the record reflects that claimant may not have fully recovered as of April 23, 1979, the Commission could properly have determined that he was no longer totally disabled and unable to work. Such a determination is best left to the skill and experience of medical experts and compensation experts. *Makris v. Industrial Com.* (1980), 82 Ill. 2d 502, 509.

We find no basis from the evidence to justify claimant's failure to seek any employment following his release for light work by Dr. Colmey on April 23, 1979. (*Cf. C. D. Turner & Sons, Inc. v. Industrial Com.* (1983), 96 Ill. 2d 228, 236-37 (the court considered whether there was evidence that claimant had demonstrated his inability to obtain employment in assessing his burden of proving temporary total disability).) The Commission's decision to eliminate temporary total disability payments as of April 23, 1979, was not against the manifest weight of the evidence.

## II

■ However, we conclude that the cutoff of medical expenses after April 23, 1979, is against the manifest weight of the evidence. The law in effect at the time of injury governs. (*Wilson-Raymond Constructors Co. v. Industrial Com.* (1980), 79 Ill. 2d 45, 51; *Health & Hospitals Governing Com. v. Industrial Com.* (1978), 72 Ill. 2d 263, 271.) Section 8(a) of the Workers' Compensation Act in effect at the time of the injury (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(a)), in substance, requires the employer to provide all necessary medical expenses, which are "reasonably required to cure or relieve from the effects of the accidental injury. \*\*\* The employee may at any time elect to secure his own physician, surgeon and hospital services at the employer's expense \*\*\*." Ill. Rev. Stat. 1979, ch. 48, par. 138.8(a).

The employer's position on appeal is essentially that all treatment after April 23, 1979, was either unnecessary or unrelated to the accident, noting that there was a six-month hiatus from medical treatment between that date and October 1979, when claimant went

to the emergency room at Northwest Community Hospital.

There is substantial and uncontradicted evidence that Drs. Ketel and Freitag both diagnosed claimant's condition as a herniated disc at L5-S1. A positive EMG taken by Dr. Belytschko in January 1980 revealed an L5 radiculopathy. An EMG taken by Dr. Ketel in June 1980 showed mild denervation. The CAT scan in July 1980 showed soft tissue bulging at the L5-S1 level, which was confirmatory of the earlier diagnosis of Drs. Ketel and Freitag. There was no conflicting opinion that the myelogram results showed that an injury existed. The fact that the condition was not diagnosed until long after April 23, 1979, is attributable to the fact that before that time, no myelogram, discogram, EMG or CAT scan had yet been taken to confirm an injury. The more complex and accurate tests taken after April 23, 1979, confirmed the traumatic origins of the claimant's complaints of persistent pain which followed the December 20, 1978, accident.

The employer's additional argument that there was an intervening injury caused by claimant's having admitted to 60 pushups on June 21, 1980, while he was at the Lutheran General Hospital, is not supported by any evidence in the record which would show that these exercises could have caused the injury. The hospital notes of that date show no sudden traumatic injury, nor any dramatic changes in claimant's complaints or behavior.

The judgment of the circuit court of Cook County confirming the decision of the Industrial Commission that claimant failed to prove that he was totally disabled after April 23, 1979, as the result of the December 20, 1978, accident is affirmed. That portion of the court's judgment which confirmed the disallowance of reimbursement for any medical expenses incurred after April 23, 1979, is vacated. The cause is remanded to the Industrial Commission for further proceedings consistent with this opinion.

Affirmed in part; vacated and remanded in part.

McNAMARA, BARRY, WEBBER and KASSERMAN, JJ., concur.