P.T.O. SERVICES, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Jerald Menozzi, Appellee).

Third District (Industrial Commission Division) No. 3—88—0110WC

Opinion filed September 1, 1989.

McNAMARA, J., dissenting.
McCULLOUGH, J., concurs in dissent.

Raymond M. Simard, of Chicago, for appellant.

Michael D. Block and Greg A. Menozzi, both of Block, Krockey, Cernugel & Cowgill, P.C., of Joliet, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

On March 3, 1978, the petitioner, Jerald Menozzi, was a truck driver/delivery man for the respondent, P.T.O. Services, Inc. On that date, in the course of his employment, the petitioner, while straightening out the back of his truck, slipped on some broken skids. He fell

from the back of the truck, landing on his right arm and wrist. During the course of the fall, he hit his back on a piece of angle iron in the truck. He felt something pop in his right shoulder and experienced pain in the right shoulder and back. He received injuries to his back, right shoulder and ribs.

The arbitrator made an award under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*), finding that the petitioner had a permanent partial disability to the extent of 50%. The arbitrator awarded the petitioner 84³/₇ weeks of temporary total disability. On review, the Industrial Commission reduced the temporary total disability award to 56 weeks and the award of permanent partial disability from 50% loss of a man as a whole to 8% loss of a man as a whole and 15% loss of the use of the right arm.

Following a hearing, which was ordered by the Illinois Supreme Court in *Menozzi v. Industrial Comm'n* (1983), 96 Ill. 2d 468, 451 N.E.2d 853, on Mr. Menozzi's petition under section 19(f) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.19(f)), the Industrial Commission reiterated its initial reduced award.

The petitioner appealed to the circuit court of Will County, which reversed the Industrial Commission's award, finding the Commission's decision to be against the manifest weight of the evidence. The court ordered the arbitrator's award reinstated.

The respondent, P.T.O. Services, Inc., brought this appeal, contending that the circuit court erred in finding that the decision of the Industrial Commission, following remand from the Supreme Court, is against the manifest weight of the evidence.

Following his injury, the petitioner was taken to the emergency room at St. Joseph's Hospital in Joliet. He was examined by emergency room personnel and by his family physician, Dr. Rousenelous, who had been called to the hospital. Dr. Rousenelous viewed the X rays and prescribed two rib braces for the petitioner to wear. His right arm was placed in a sling. He returned to Dr. Rousenelous about a week later. The petitioner continued to experience pain in his back and right shoulder. He also had difficulty getting out of bed and getting up from a sitting position. Dr. Rousenelous prescribed pain pills.

The petitioner was referred to Dr. Howard Sather, an orthopedic surgeon who examined him on or about May 8, 1978. Dr. Sather examined the X rays and administered two shots of cortisone in the right shoulder and one shot of cortisone in the back.

Between this initial visit and the arbitrator's hearing on November 26, 1979, the petitioner continued to be treated by Dr. Sather at two-to five-week intervals. The petitioner was given exercises to do and

continued to receive periodic cortisone shots. In the summer of 1978, on Dr. Sather's instructions, the petitioner received 2½ to 3 weeks of physical therapy consisting of three or four sessions per week.

On November 8, 1978, at Dr. Sather's request, the petitioner was examined by Dr. Michael A. Simon, an assistant professor of orthopedics with the University of Chicago Department of Surgery. Dr. Simon found tenderness in the anterior portion of the right shoulder. The results of the neurological examination and the range of motion tests of the back and shoulder were normal. Dr. Simon concluded that the petitioner would continue to get symptomatic relief over time. He recommended continued conservative treatment of the condition and hoped that the majority of symptoms would continue to resolve themselves. At the time of examination, he did not favor allowing the petitioner to do the type of heavy lifting his duties as a delivery truck driver required. In Dr. Simon's opinion, if the petitioner opted to return to work, he could either do limited duties or wait three months until he returned to full activity.

At the respondent's request, the petitioner was examined on April 11, 1979, by Dr. Churl-Soo Suk, an orthopedic surgeon. Dr. Suk found that the range of motion in the petitioner's right arm was normal, except in extreme rotation which caused the petitioner some discomfort. The examination of the back revealed that the posture was straight and that the petitioner was able to bend forward and backward, but complained of pain when doing so. All other tests were within normal limits. The examination of the petitioner's back in the prone position showed mild tenderness at the lumbosacral junction. Based on his examination, Dr. Suk could not determine why the petitioner was experiencing such severe pain.

Dr. Suk's report on this examination says nothing about the petitioner's ability to return to work or do heavy lifting. It says only that the examination failed to show any significant objective findings.

On October 30, 1979, Dr. Sather examined the petitioner for the last time prior to the arbitrator's hearing. The examination revealed chronic tendonitis of the right shoulder with limited abduction and pain, and chronic lumbosacral strain without radiculitis. Dr. Sather concluded that the petitioner was obviously not able to carry out the extremes of heavy work, and that in the future, excessive lifting, climbing or stooping would need to be eliminated from his work activity.

A report, dated November 15, 1979, relates the findings of Dr. Spurgeon Green's examination just prior to the arbitrator's hearing. He notes tenderness in the petitioner's right shoulder and in the lumbosacral spine with spasms present in the paravertebral muscle. He

also observed that the petitioner had difficulty flexing the spine to retrieve an object from the floor, and in moving from the supine to the prone position. Dr. Green concluded that the petitioner suffered, *inter alia*, a dislocation of the right shoulder with limited range of motion, a lumbosacral strain and a lumbosacral contusion.

Based on this medical evidence, and his own observation of the petitioner and the petitioner's testimony, the arbitrator made his decision regarding the award.

Prior to the Industrial Commission's hearing on review, the petitioner was again examined by Dr. Green and Dr. Suk. The reports of the doctors' findings were submitted to the Commission.

Dr. Suk's March 5, 1980, examination again failed to yield any significant objective findings of problems in the petitioner's condition. Dr. Suk believed it would benefit the petitioner to undergo physical therapy for the lower back and right shoulder. He also felt the petitioner could return to light duty and could probably be reemployed in his regular duties as a truck driver in about three or four weeks.

Dr. Green's reexamination on May 5, 1980, showed no improvement in the petitioner's condition since the previous November examination.

■ It is the function of the Illinois Industrial Commission to determine the extent of the petitioner's injuries (*McKay Plating Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 198, 437 N.E.2d 617), and to resolve conflicting medical opinions. (*Inland Steel Coal Co. v. Industrial Comm'n* (1980), 81 Ill. 2d 61, 405 N.E.2d 781.) It is the function of a court on review to determine whether the findings and conclusions of the Industrial Commission are against the manifest weight of the evidence. *Quick v. Industrial Comm'n* (1972), 53 Ill. 2d 46, 289 N.E.2d 617.

The question presented in this case is whether the decision of the Commission was against the manifest weight of the evidence justifying the circuit court's order reversing the Commission's decision and reinstating the arbitrator's award. We think that it was.

Following the hearing on November 26, 1979, the arbitrator awarded the petitioner temporary total disability benefits from March 3, 1978, through October 25, 1979, a period of 84³/₇ weeks. On review, the Industrial Commission reduced the award to 56 weeks, which terminated such benefits as of April 7, 1979. This reduction coincided with the amount previously paid to the petitioner. As aforesaid, the Commission also reduced the arbitrator's award for permanent partial disability from 50% loss of a man as a whole to 8% loss of a man as a whole and 15% loss of the use of the right arm.

The petitioner's job required a great deal of heavy lifting and carrying. In uncontradicted testimony by the petitioner, he related that he had been told he could not return to work until he was able to carry out his former duties. This was because there was no light duty work available for him at P.T.O. Services. The petitioner has no other special skills or training, nor any higher education. He has driven a truck all his adult working life.

None of the medical opinions offered finds that the petitioner's condition had resolved itself to the point that he could return to his previous job without restrictions. The respondent's physician, Dr. Suk, could not find any objective reasons why the petitioner was suffering from such severe pain. However, following Dr. Suk's second examination, in March of 1980, he concluded that the petitioner could return only to light duty and could probably return to full work activity in three or four weeks. All the other medical evidence finds that at the time of examination, the petitioner could not perform the heavy lifting required in his job. Further, the opinion of Dr. Sather that the petitioner's future work activity would have to exclude excessive lifting, climbing or stooping is in effect uncontradicted. While all medical evidence points to a probability or hope that the petitioner's condition would resolve itself, there were no follow-up examinations to prove the accuracy of these predictions. The evidence shows a significant permanent disability.

We find that the circuit court was correct in reversing the decision of the Industrial Commission as contrary to the manifest weight of the evidence. Additionally, the record supports its reinstatement of the arbitrator's award. As the Illinois Supreme Court has noted, while an arbitrator's findings are not binding on the Commission, the arbitrator's decision is not without legal effect. A reviewing court setting aside the Commission's decision may rely on an arbitrator's findings and reinstate the arbitrator's award. See *Quick v. Industrial Comm'n* (1972), 53 Ill. 2d 46, 289 N.E.2d 617; *Burrell v. Industrial Comm'n* (1988), 171 Ill. App. 3d 723, 525 N.E.2d 935.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

WOODWARD and LEWIS, JJ., concur.

JUSTICE McNAMARA, dissenting:
I respectfully dissent. I believe that there was ample evidence to

support the Commission's award to the petitioner of permanent partial disability of 8% for a man as a whole and of 15% loss of use of his right arm. I would reverse the judgment of the circuit court reinstating the arbitrator's award.

The employee must show not only that he did not work, but also that he was unable to work. (*Lukasik v. Industrial Comm'n* (1984), 124 Ill. App. 3d 609, 614, 465 N.E.2d 528.) The Commission must resolve conflicting medical opinions, and that resolution cannot be disturbed by a reviewing court unless it is against the manifest weight of the evidence. (*Childress v. Industrial Comm'n* (1982), 93 Ill. 2d 144, 442 N.E.2d 841.) The skill and experience of medical experts and compensation experts demand that we defer to such opinions. (See *Lukasik v. Industrial Comm'n* (1984), 124 Ill. App. 3d 609, 465 N.E.2d 528, citing *Makris v. Industrial Comm'n* (1980), 82 Ill. 2d 502, 509, 413 N.E.2d 385.) The record here shows conflicting medical opinions as to whether petitioner was able to return to work without restrictions at any given time.

Dr. Simon opined in November 1978 that petitioner was *then* able to return to work, but that he should not lift weights of 200 to 300 pounds, the amount which petitioner reported he was required to life at work. Moreover, Dr. Simon went on to say that even the heavy work could be performed by petitioner in three months, *i.e.*, in early 1979. Dr. Suk opined in both April 1979 and March 1980 that examinations and X rays of petitioner revealed no significant objective findings. In recognition of the fact that petitioner had not "performed any type of work for over a year," Dr. Suk suggested petitioner might "be benefitted, if he can take physical therapy *** and may start out for light duty for about 3 to 4 weeks, and probably can then be reemployed in his regular duty as a truck driver."

The Commission was entitled to rely on the opinions of these two orthopedic surgeons that examinations in 1978, 1979 and 1980 showed petitioner was ready to ease back into his regular job duties.

The majority incorrectly states that "[n]one of the medical opinions offered finds that the petitioner's condition had resolved itself to the point that he could return to his previous job without restrictions." (188 Ill. App. 3d at 28.) The fact that Dr. Suk acknowledged in 1980 that, against his earlier opinion petitioner had still performed no type of work, and thus would need three or four weeks to ease into his regular duties, does not weaken his underlying medical opinion that petitioner was fit to work. Similarly, Dr. Simon merely restricted petitioner for an additional three months from lifting weights of *200 to 300 pounds,* hardly a restriction of such significance that it would require

reversal of the Commission's decision.

The Commission was entitled to accord less weight to the opinion of Dr. Green, who was not an orthopedic surgeon and instead practiced family and internal medicine, that there were some positive findings, *e.g.*, in straight leg raising and reduction of movement in the right shoulder. Dr. Green offered no opinion at all regarding claimant's ability to perform any physical activities or work duties.

Similarly, Dr. Sather, who referred petitioner to Dr. Simon, merely stated in 1979 that petitioner avoid "extreme heavy work" such as "excessive lifting, climbing, stooping." Neither of those statements, when offered in conjunction with those of Drs. Suk and Simon, requires the Commission to find petitioner has a greater disability than 8% of the man as a whole and 15% loss of the use of his right arm.

The majority rests its analysis on the reasoning that the medical evidence merely pointed to "a probability or hope that the petitioner's condition would resolve itself," but fatally lacked any "follow-up examinations to prove the accuracy of these predictions." (188 Ill. App. 3d at 28.) I find Drs. Suk and Simon offer much more than "a probability or hope." Moreover, despite the fact that follow-up examinations might always be interesting or satisfy any lingering curiosity, they have never been required by this court to affirm an otherwise well-supported decision as to the extent of a disability. Furthermore, it would seem contradictory to point to the absence of additional follow-up examinations, and then turn around and reinstate a decision of an arbitrator who did not have the benefit of the two follow-up examinations which were actually performed.

I find the decision of the Industrial Commission to be amply supported by the medical evidence. I would reverse the judgment of the circuit court of Will County reversing that decision.

McCULLOUGH, J., concurs.