NEIL HALLENBECK, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Eastern Airlines, Inc., Respondent-Appellee).

First District (Industrial Commission Division)   No. 1—91—2992WC

Opinion filed July 24, 1992.

Jacob N. Gross, Ltd., of Chicago, for appellant.

Jobin & Flynn, of Chicago, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:
Claimant, Neil Hallenbeck, appeals the order of the circuit court which dismissed his petition for judicial review of an Illinois Industrial Commission (Commission) decision for lack of subject matter jurisdiction and found that, assuming jurisdiction, the order claimant sought review of was not against the manifest weight of the evidence. While we find that the trial court did have jurisdiction, we agree that the Commission's decision was not against the manifest weight of the evidence.

The pertinent facts are as follows. Claimant, a 57-year-old aircraft mechanic, first worked for the employer, Eastern Airlines, Inc., in 1968. On October 1, 1985, claimant was asked to turn on the power of an airplane. In the process of doing so, he fell from a ladder, injuring his knee. Claimant testified that he wrote a note to William Scapelli, his foreman, the day of the accident, requesting Scapelli to make out the required report. One or two days later, claimant testified, he engaged in a conversation with Scapelli, and asked Scapelli if he had made out the injury report. According to claimant, Scapelli replied that he had not had time to make out the report, and further that Scapelli made no reply when claimant asked him if he had received claimant's note. Scapelli, on the other hand, testified that he had not received the note and knew nothing of the October 1, 1985, accident.

After the accident, claimant continued to work until April 23, 1986. From that date until July 14, 1986, claimant did not work. When he returned to the job on July 14, 1986, claimant was unable to perform mechanic work. In November of 1986, claimant took some

vacation time before undergoing surgery upon his left knee on December 1, 1986. Claimant was subsequently released for work on May 4, 1987.

On October 2 and 9, and November 12, 1985, claimant saw Dr. Pokornowski. On these occasions, he was given a cortisone shot in the left knee and painkilling pills. On April 28, 1986, claimant was referred to Dr. Mains, an orthopedic surgeon, who prescribed a proximal tibial osteotomy of the left knee with valgus placement. Claimant's operation was performed on December 1, 1986; he was discharged from the hospital on December 14, 1986. Dr. Mains subsequently released claimant to return to work on May 4, 1987. Dr. Hutson, the employer's medical examiner, permanently limited claimant to desk duty on April 28, 1987. The employer, however, did not offer claimant a desk job.

On August 13, 1987, Dr. Dachman diagnosed claimant's medical problems as (1) obesity, (2) hypothyroidism, (3) a history of polio involving his right lower leg, (4) osteoarthritis of the left knee, and (5) status post left tibial osteotomy. Dr. Dachman indicated that claimant could not continue in his employment capacity as a mechanic. Dr. Barry Lake Fischer examined claimant and testified that claimant would be restricted in any occupation from climbing, standing, kneeling, squatting, walking, climbing stairs or ladders, and pulling, lifting or carrying in excess of 50 pounds.

Claimant himself testified to continuing pain in the left knee, and balance impairment which requires the use of a cane when climbing stairs or walking more than a block or two.

Claimant filed an application for benefits with respect to the October 1, 1985, injury. On December 18, 1987, the arbitrator rendered a decision, awarding claimant 56⁴/₇ weeks of temporary total disability, $22,094.77 in necessary first aid, medical and surgical benefits, permanent total disability and additional compensation under sections 16, 19(k) and (l) of the Illinois Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, pars. 138.16, 138.19(k),(l)). On September 11, 1990, the Commission modified the arbitrator's award, awarding claimant 32⁶/₇ weeks of temporary total disability at $494.67 per week and $293.61 per week for a period of 126 weeks due to a finding of 63% permanent loss of use of the left leg.

On September 19, 1990, claimant filed a petition to correct clerical error in the Commission's decision. This petition prayed that the September 11, 1990, decision be modified to reflect the award indicated in the Commission's prior, January 17, 1989, predecision memorandum. The predecision memorandum had awarded claimant tempo-

rary total disability for a period of 82⁶/₇ weeks, permanent loss of use of 70% of the left leg, and additional medical expenses, while the pre-decision memorandum denied additional compensation under sections 16 and 19 of the Act. The employer responded to claimant's petition on September 21, 1990, and claimant filed a reply on September 24, 1990.

On October 16, 1990, the Commission issued its corrected decision and opinion on review. Therein, the Commission stated:

"The Commission further notes that the 'predecision memoran-dum' issued on January 17, 1989 contained a clerical/computa-tional error in the amount of weeks of temporary total disabil-ity benefits awarded, which is herein corrected to reflect the correct number of weeks in accordance with the evidence. The Industrial Commission at that time incorrectly and inadver-tently computed temporary total disability benefits commencing October 2, 1985, whereas the parties stipulated that [Claim-ant's] period of total disability commenced on April 23, 1986 and further evidence adduced confirmed [Claimant's] intermit-tent periods of temporary total disability to April 28, 1987, *** and therefore the Commission finds that [Claimant] was tempo-rarily and totally disabled for 32-⁶/₇ weeks."

The Commission's corrected decision further stated that claimant's permanent loss of use of the left leg was to the extent of 70%, awarded $23,064.02 in medical expenses, and denied additional com-pensation for penalties under the Act.

Next, claimant filed for judicial review with the circuit court, seeking review of the October 16, 1990, decision—not the September 11, 1990, decision. The circuit court raised the issue of whether it had subject matter jurisdiction due to the absence of a letter of recall of the Commission's first decision. The circuit court questioned the valid-ity of the October 16, 1990, decision in the absence of a recall letter. Accordingly, the circuit court remanded the matter to the Industrial Commission with directions to the Commission to search its records for the letter of recall.

On June 11, 1991, the Commission held a hearing. There, the Commission found that the recall provisions of the Act had in fact been complied with. The commissioner based this determination upon both the fact that Commission procedures allowed for the issuance of a corrected decision only pursuant to a recall letter, and upon the fact that there were extra copies of the first decision in the file, whose presence could only be explained by the existence of a proper recall-ing of that decision. The commissioner further stated that he had spo-

ken with an administrative assistant who had assured the commissioner that despite the absence of a letter of recall in the file, a letter of recall had indeed been timely issued. In short, the Commission found that it had employed proper recall procedures, which invalidated the September 11, 1990, decision and validated the October 16, 1990, decision.

Upon review once again, however, the circuit court ruled that due to the fact that there was no letter of recall in the record, it lacked subject matter jurisdiction to review the October 16, 1990, decision, and the original decision remained in effect. The court added that the Commission's finding that claimant was not permanently totally disabled was not against the manifest weight of the evidence, and that the Commission's finding that penalties were not appropriate was not against the manifest weight of the evidence.

The threshold issue we address is whether the circuit court erred in determining that it was without power to review the October 16, 1990, decision. The trial court determined that the sending of a letter of recall of the parties was "implicitly" a requirement under section 19(f), and in using a standard of "strict compliance" with section 19(f), determined that it was without power to review the October 16, 1990, decision.

■■ Section 19(f) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(f) (the Act) provides in relevant part:

> "The decision of the Commission *** shall *** be conclusive unless reviewed as in this paragraph hereinafter provided. However, the Arbitrator or the Commission may on his or its own motion, or on the motion of either party, correct any clerical error or errors in computation within 15 days after the date of receipt of any award by such Arbitrator or any decision on review of the Commission and shall have the power to recall the original award on arbitration or decision on review, and issue in lieu thereof such corrected award or decision. Where such correction is made the time for review herein specified shall begin to run from the date of the receipt of the corrected award or decision."

In ruling that it was without subject matter jurisdiction to review the case, the circuit court relied upon the following cases: *Arrington v. Industrial Comm'n* (1983), 96 Ill. 2d 505, 451 N.E.2d 866; *Whitmer v. Industrial Comm'n* (1989), 187 Ill. App. 3d 409, 543 N.E.2d 267; and *E.L. Kaplan Trucking Co. v. Industrial Comm'n* (1990), 195 Ill. App. 3d 640, 553 N.E.2d 37. We find the foregoing authority distinguishable.

In *Arrington*, the supreme court held that an attorney's affidavit, which represented that a check for payment of probable costs of the record had been mailed to the Commission's secretary, was insufficient to establish section 19(f)(1)'s (Ill. Rev. Stat. 1981, ch. 48, par. 19(f)(1)) requirement that a claimant seeking review of a Commission decision exhibit to the clerk of the circuit court a receipt showing such payment. In *Whitmer*, the claimant filed a summons to both the Commission and respondent's attorney, a certificate of mailing and a receipt for payment of the record to the Commission. However, the claimant failed to file a written request for issuance of summons, as required by section 19(f)(1). The court affirmed the circuit court's dismissal of claimant's review for lack of subject matter jurisdiction. Finally, the *E.L. Kaplan* case did not involve section 19(f), but rather involved the claimant's failure to establish entitlement to expedited benefits under section 19(b—1) of the Act. Ill. Rev. Stat. 1985, ch. 48, par. 19(b—1).

In the case *sub judice*, unlike all of the cases the trial court relied upon, it is clear that claimant properly and timely sought correction of the initial decision, and properly and timely sought review of the corrected, October 16, 1990, decision. The failure involved, if any, was that of the Commission in failing to issue a letter of recall. It should be noted that section 19(f) does not expressly state that a letter of recall must issue in order for a decision to be properly recalled. In arguing that the proper issuing of a letter of recall is a prerequisite to subject matter jurisdiction of the circuit court, the employer cites the cases of *P P G Industries, Inc. v. Industrial Comm'n* (1982), 91 Ill. 2d 438, 438 N.E.2d 173, and *American Can Co. v. Industrial Comm'n* (1986), 149 Ill. App. 3d 83, 500 N.E.2d 544. In *PPG*, the court interpreted section 19(f) to mean that the 15-day limitation therein applied to the time the original decision must be recalled and not to the time in which the original decision was issued. *PPG* did not say that a letter of recall was a prerequisite to jurisdiction, and has been interpreted as referring to the time frame in which the initial step of recall (*i.e.*, the motion for correction) must be taken. See *American Can Co. v. Industrial Comm'n* (1986), 149 Ill. App. 3d 83, 86, 500 N.E.2d 544.

In *American Can*, the court noted that *PPG*'s use of the word "recall" was limited to the facts of *PPG* (149 Ill. App. 3d at 86), and the court held that an employer's refiling of its original summons for a workers' compensation review under the same case number as the initial summons, without filing a second bond, was improper in that the employer was required to file a new summons because the original summons was premature and hence void. (149 Ill. App. 3d at 87.)

*American Can*, like *PPG*, did not discuss the requirement that a letter of recall be issued. Likewise, neither case discussed the consequences of the Commission's failure to issue a letter of recall, or the consequences of a case being recalled in a different manner.

■ In the case *sub judice*, the Commission itself, upon remand, specifically found that a letter of recall had been issued, or put more generically, that the original Commission decision had been properly recalled. The Commission based this determination on its own knowledge of its recall procedures, and a representation to the Commission by an administrative assistant that a letter had in fact been issued, despite the fact that it was not in the file and apparently not in the possession of respondent's counsel.

Recently, we have held that a written request for a summons, though not including all of the requirements of section 19(f)(1), was sufficient to substantially comply with the statute. (See *Chambers v. Industrial Comm'n* (1991), 213 Ill. App. 3d 1, 571 N.E.2d 1001.) We have similarly held that the circuit court erred in dismissing claimant's cause based upon a failure to designate a return date on a request for summons, as section 19(f)(1) was substantially complied with. (*Advance Transportation Co. v. Industrial Comm'n* (1990), 202 Ill. App. 3d 449, 559 N.E.2d 1038.) In these cases, the claimants did what the statute required of them, albeit ineffectually. Here, any error in the review process was not claimant's, and the Commission found that the case was properly recalled. Accordingly, we hold that the circuit court did have subject matter jurisdiction.

The question remains whether the Commission's corrected decision was against the manifest weight of the evidence.

■ Claimant relies upon a number of cases in arguing alternatively that he fit into the "odd-lot" category, and that he established he was permanently and totally disabled. In the recent case of *Marathon Oil Co. v. Industrial Comm'n* (1990), 203 Ill. App. 3d 809, 815-16, 561 N.E.2d 141, the court observed:

> "An employee is totally and permanently disabled under workers' compensation law where he is unable to make some contribution to industry sufficient to justify payment of wages to him. [Citation.] He must show that he is, for practical purposes, unemployable. [Citation.] A person need not be reduced to a state of total physical helplessness, but is totally disabled when he cannot perform services except those that are so limited in quantity, dependability or quality that there is no reasonably stable market for them. [Citation.]

The employee bears the burden of proving each element of his case, including the extent and permanency of the injury. [Citation.] It is within the province of the Commission to determine the factual issues, to decide the weight to be given to the evidence and reasonable inferences to be drawn therefrom, and to assess the credibility of witnesses. The Commission's determination of these issues will not be set aside unless it is against the manifest weight of the evidence. [Citation.]"

■ In *Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 546-47, 419 N.E.2d 1159, the court stated:

"Under *A.M.T.C.*, if the claimant's disability is limited in nature so that he is not obviously unemployable, *or if there is no medical evidence to support a claim of total disability*, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the 'odd-lot' category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market [citation]), then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant [citation]." (Emphasis in original.)

■ In the case at bar, the medical evidence clearly established that claimant, due both to his previous conditions of ill-being and condition of ill-being which resulted from the October 1985 accident, could not return to work as a mechanic. However, the medical reports of Drs. Hutson and Dachman established that claimant was released for desk or bench work. The ability to perform sedentary work has been considered as a factor militating against a finding that one is permanently and totally disabled. (See *Interlake, Inc. v. Industrial Comm'n* (1981), 86 Ill. 2d 168, 427 N.E.2d 103.) Likewise, a claimant's failure to search for work within his restrictions is a factor which militates against a finding of permanent and total disability. See, *e.g., Lukasik v. Industrial Comm'n* (1984), 124 Ill. App. 3d 609, 465 N.E.2d 528.

Claimant has not pointed to any evidence, other than his age, which would suggest he is not employable in a well-known branch of the labor market. In this respect, the case is unlike *Illinois-Iowa Blacktop, Inc. v. Industrial Comm'n* (1989), 180 Ill. App. 3d 876, 536 N.E.2d 773, which claimant relies upon, where we affirmed a

Commission decision that claimant was permanently and totally disabled. In *Illinois-Iowa*, there was testimony about claimant's age, education and prospects for rehabilitation, including the testimony of a vocational consultant. This testimony included evidence that the claimant was illiterate with a third-grade education, and had worked exclusively for the employer. Here on the other hand, the record reveals that claimant had completed high school, and prior to working for the employer had worked in a factory, driving a truck and as a mechanic. As such, we are not convinced that claimant established odd-lot status. Under the circumstances, the Commission's determination that claimant's condition was not one of total and permanent disability, and that his temporary total disability lasted from the date of accident to an initial return to work, and from the day he underwent surgery to the day he was initially released to return to work (a period of 32⁶/₇ weeks), is not against the manifest weight of the evidence.

■■ Further, based upon the conflict in testimony between claimant and Scapelli (claimant's foreman) as to notice, and on the fact that claimant had other medical problems and preexisting medical ailments, the Commission's determination that penalties were not properly awardable under sections 16 and 19 of the Act is not against the manifest weight of the evidence.

Accordingly, the circuit court's dismissal of claimant's case is reversed, and the October 16, 1990, decision of the Commission affirmed.

Circuit court reversed; Industrial Commission affirmed.

McCULLOUGH, P.J., and WOODWARD, STOUDER and H. LEWIS, JJ., concur.