SAMUEL BURRELL, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Electro-Motive Division, General Motors Corporation, Appellee).

First District (Industrial Commission Division)   No. 1—87—1780WC

Opinion filed May 25, 1988.—Rehearing denied July 21, 1988.

McCULLOUGH, J., dissenting.

Kenneth B. Gore, Ltd., of Chicago (Mark A. DePaolo, of counsel), for appellant.

Pope, Ballard, Shepard & Fowle, Ltd., of Chicago (William A. Morgan, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The petitioner, Samuel Burrell, filed an application for adjustment of claim under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). The petitioner alleged that he injured his right knee while employed by the respondent, General Motors Corporation. The arbitrator found that the petitioner sustained injuries arising out of and in the course of his employment with the respondent and awarded the petitioner medical expenses, temporary total disability and permanent partial disability for the 40% loss of the use of his right leg. The Commission reversed the findings of the arbitrator, denying an award. The circuit court confirmed the Commission's decision. The petitioner appeals.

At a hearing before the arbitrator, the petitioner testified to the following. On Friday, October 5, 1979, the petitioner was employed by the respondent at its Electro-Motive Division plant (the plant). The petitioner's duties included the tightening of locomotive engine bolts with a six-foot-long torque wrench. At 10 p.m. on that day, the petitioner was pulling on the wrench when he slipped, fell and hit the floor. The petitioner landed first on his knee, then his back, then his whole body. He was lying on his knee after the fall; and he felt pain there.

About 30 minutes later, the petitioner's supervisor, Harvey Blanden, approached the petitioner. Blanden had heard that the petitioner had fallen. He asked if the petitioner wanted to go to the plant medical department. The petitioner replied that he felt all right and that he was going to go home and "see what happened."

The following Monday, October 8, 1979, the petitioner called his family physician, Dr. G. J. Mouzon. Dr. Mouzon instructed the petitioner to go back to the plant for X rays. The petitioner returned to the plant the following Wednesday. When he went to the medical department for X rays, the company doctor informed the petitioner that he believed the petitioner's condition was a private matter and that they would not X ray him. The petitioner then returned to work.

The petitioner began missing work intermittently starting in November of 1979. He was experiencing pain when squatting all the way

down and was having difficulty walking up and down stairs. The petitioner discontinued working in April of 1980.

In May of 1980, the petitioner began seeing Dr. Michael Treister. The doctor began the petitioner on a course of treatment which included physical therapy. The petitioner underwent surgery for his knee on August 1, 1980, and continued therapy through October of 1980. He returned to work in late October of 1980 and was released from Dr. Treister's care in January of 1981.

The petitioner stated that he had not had any knee injuries prior to or since October 5, 1979. He continued to experience frequent pain on the job and problems walking up and down stairs.

On cross-examination, the petitioner stated that the instant fall dazed him. The petitioner recollected that his knee hit the floor first. He could not remember if he hit his back. He said he reported the accident by phone on Monday following the accident, returned to work on Wednesday and went to see the plant doctor on Thursday. The petitioner stated that he first saw Dr. Mouzon about one month later. He denied that he first saw Dr. Mouzon on April 8, 1980. The petitioner further denied that the first time he visited the medical department for his knee injury was March 11, 1980.

The petitioner called Ismael Nodarse to testify. Nodarse testified that he was working with the petitioner on October 5, 1979. Nodarse stated that he was watching the dial on the petitioner's torque wrench when he saw the petitioner suddenly fall to the ground. Nodarse could not recall which part of the petitioner's body struck the floor first. Nodarse also could not remember if he saw the petitioner talk to Blanden afterwards. On cross-examination, Nodarse stated that the accident occurred close to quitting time, "in the neighborhood of 10:30, 11, 11:30" at night. Nodarse also stated that when he went to pull the petitioner off the floor, the petitioner appeared to be in pain.

The petitioner introduced a number of exhibits, three of which are relevant here. The first was two receipts for bills for visits to Dr. Mouzon's office dated April 8, 1980, and November 3 of an unknown year, respectively. The second was a letter from Dr. Treister to the respondent dated January 21, 1981. In the letter, the doctor stated that he last examined the petitioner on January 15, 1981. From that exam, Dr. Treister concluded that there was a "residual permanent disability on an industrial basis" resting on the "post-operative state of the patella"; that there was a "high probability for future degenerative osteoarthritis" in the right knee joint as "the result of a cartilaginous injury to the patella"; and that the petitioner should avoid kneeling

and squatting as much as possible. The third was the report of a May 27, 1980, examination of the petitioner conducted by Drs. Robert Busch and Hyman Hirshfield. In the report, the doctors found a contusion and strain of the right knee with impaired motility and swelling. When the petitioner's attorney introduced this exhibit, he stated that if Drs. Busch and Hirshfield were called to testify, they would causally connect the petitioner's condition to the October 5, 1979, accident and they would state that the petitioner's condition was permanent. The respondent objected to this characterization of the evidence. The arbitrator received the evidence.

The respondent called Harvey Blanden to testify. Blanden testified that he believed that the petitioner worked under his supervision in October of 1979. Blanden stated that on the date of the alleged accident, the petitioner did not report an injury to him. On cross-examination, Blanden stated that he could not recall the month of October in 1979 and admitted that it was possible that the petitioner had reported the injury to him. Blanden also stated that he makes a record when a worker is sent to the medical department for an injury but that there would be no record of the petitioner's visit to the medical department unless he had sent the petitioner there immediately after the incident.

The respondent introduced two exhibits into evidence. The first exhibit was an insurance claim form. The first side of the form was filled out by the petitioner. In describing the accident, the petitioner stated that while pulling on a torque wrench, he slipped and fell, knocking himself semiunconscious. Dr. Mouzon, who completed the reverse side, listed April 8 and April 17, 1980, as dates of the petitioner's treatments during his period of disability.

The second exhibit for the respondent was a letter from Dr. E. Thomas Marquardt. It stated that in a September 3, 1981, examination of the petitioner, the petitioner complained to the doctor of pain around his kneecap, and difficulty in squatting, kneeling and climbing. Dr. Marquardt found that the petitioner's knee had a full range of motion but that the petitioner resisted the motion.

On review, the Commission heard no new testimony. However, both sides introduced various exhibits. The respondent presented Dr. Marquardt's report of his March 2, 1984, examination of the petitioner. According to the report, the petitioner complained of intermittent knee pain and swelling. The doctor opined that the petitioner had mild patellar tendonitis in the right knee and that there was no reason for the petitioner not to return to work. The respondent also presented the plant medical records wherein the earliest reference to the

petitioner's knee injury was March 11, 1980.

The petitioner introduced into evidence the report of Dr. Hirshfield's examination of the petitioner on April 5, 1984. In his report, the doctor noted that the petitioner complained of pain, swelling and stiffness in the right knee. The doctor concluded that the petitioner suffered a major industrial loss of his right leg.

From the entirety of the evidence, the Commission found that the petitioner failed to prove that he sustained an accidental injury arising out of and in the course of his employment with the respondent. The Commission found the following inconsistencies: (1) the petitioner stated that the incident occurred at 10 p.m. while Nodarse claimed that the incident happened sometime between 10:30 and 11:30 p.m.; (2) Nodarse could not say whether the petitioner's knee struck the ground when he fell; (3) the petitioner stated that he first went to the plant medical department on October 10, 1979, but admitted on cross-examination that the company records would be correct if they stated that he first reported to the medical department on March 11, 1980; (4) the petitioner testified that he saw Dr. Mouzon one month after the accident and four more times before May of 1980, but an insurance form completed by Dr. Mouzon indicated that the petitioner first sought treatment on April 8, 1980; (5) the discharge summary at the hospital where the petitioner had had knee surgery indicated that according to the petitioner, in October of 1979 he fell a distance of seven feet, landing on his right knee; (6) the company medical records set forth that on March 11, 1980, the petitioner indicated that the accident occurred on October 10, not October 5; and (7) although the petitioner claimed that he fell on his knee and back, on cross-examination he admitted that he could not remember if he struck his back when he fell.

Based on the above, the Commission vacated the arbitrator's findings and award. The circuit court confirmed the Commission's decision. The petitioner perfected this appeal.

The petitioner's sole issue on appeal is whether the Commission's decision that the petitioner failed to prove that he sustained accidental injuries arising out of and in the course of his employment on October 5, 1979, was against the manifest weight of the evidence. The petitioner first argues that any minor inconsistencies between his and Nodarse's testimony, including the time of the accident and whether the petitioner's knee struck the ground, are immaterial and attributable to the 3½ years between the accident and the arbitrator's hearing. The petitioner maintains that Nodarse's testimony supports his version of the accident.

The petitioner next argues that he testified that the company records would *not* be correct if they stated that his first visit to the clinic for his October 5, 1979, accident was April 8, 1980. The petitioner contends that his testimony is unrefuted that upon his return to work he immediately requested treatment at the medical department.

The petitioner further argues that as to the insurance form, Dr. Mouzon was asked to list the dates of all treatments during the period of the petitioner's disability, not the first date the petitioner sought treatment as the Commission suggested. The petitioner claims that as he first went on disability in April of 1980, Dr. Mouzon's stated treatment date of April 8, 1980, is not inconsistent with the petitioner's testimony. The petitioner notes that Dr. Mouzon indicated on the insurance form that the petitioner gave October 5, 1979, as the date of the accident.

The petitioner goes on to argue that although the hospital discharge summary, which without further explanation did mention a seven-foot fall, was presented for the first time on review before the Commission, the petitioner was not questioned about it. The petitioner points out that the summary indicates the date of the accident to be October 5, 1979.

Finally, the petitioner argues that as to the company medical records, he actually stated that the accident occurred "about the 10th." The petitioner notes that the records give a description of the accident consistent with his testimony.

The respondent counters that the Commission's decision was not against the manifest weight of the evidence. The respondent argues that the Commission determined that the inconsistencies in the record undermined the petitioner's credibility and it thus concluded that the petitioner failed to prove that he sustained the alleged accident. The respondent urges this court to affirm the decision of the Commission.

■ This court will not disturb the decision of the Industrial Commission unless it is against the manifest weight of the evidence. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1980), 81 Ill. 2d 416, 410 N.E.2d 850.) It is for the Commission to resolve conflicting testimony, judge the credibility of the witnesses and draw inferences from the evidence. *Pazara v. Industrial Comm'n* (1980), 81 Ill. 2d 76, 405 N.E.2d 767.

In *Jacobson v. Industrial Comm'n* (1981), 84 Ill. 2d 153, 417 N.E.2d 1328, a case upon which the petitioner primarily relies, the claimant testified that while lifting a 55-gallon drum, the drum slipped and struck his knee. The claimant did not report the injury until two days later. In the interim, on the day following the accident, the

claimant went to a hospital for treatment because of pain and swelling in his knee. Medical records showed that the claimant suffered an injury and corroborated his version of the events. The Commission reversed the arbitrator's finding of injury. On appeal, the supreme court found that the claimant Jacobson's version of the accident was uncontradicted. Further, the court found that the medical evidence was undisputed that the claimant suffered a knee injury, and no other reasonable explanation was offered or was readily inferrable as to how the claimant was injured. The court found the Commission's decision to be against the manifest weight of the evidence.

*Jacobson* is analogous to the case at bar. The petitioner's testimony concerning the accident is consistent and essentially uncontradicted. Nodarse's testimony generally supports the petitioner's story. Blanden admitted that because he could not remember the month of October 1979 it was possible that the petitioner reported the accident to him. The medical evidence that the petitioner suffered a knee injury which required surgery corroborates the petitioner's testimony. The respondent has not offered another theory to explain the cause of the petitioner's condition. The record does not reveal another apparent, reasonable inference as to the cause of the injury.

■ It is worth noting that there is no evidence that the petitioner suffered knee problems prior to his accident. Absence of proof of ill-being of an employee prior to the time of the injury, coupled with a change immediately following the injury continuing thereafter, is competent as tending to establish that the impaired condition was due to the injury. See *Plano Foundry Co. v. Industrial Comm'n* (1934), 356 Ill. 186, 190 N.E. 255.

■ In short, we find that the Commission's decision that the petitioner failed to prove an accidental injury arising out and in the course of his employment was against the manifest weight of the evidence.

The respondent raises the additional issue of whether this court can reinstate the arbitrator's award should the Commission's decision be overturned. The respondent argues that because the Commission decided only that the petitioner failed to sustain his burden of proof, this cause must be remanded to determine the extent of the disability.

■ The respondent's argument is without merit. As the supreme court has noted, while an arbitrator's findings are not binding on the Commission, the arbitrator's decision is not without legal effect. A reviewing court setting aside the Commission's decision may rely on an arbitrator's findings and reinstate the arbitrator's award. See *Quick v. Industrial Comm'n* (1972), 53 Ill. 2d 46, 289 N.E.2d 617.

Accordingly, we reverse the decision of the Industrial Commission and reinstate the findings and award of the arbitrator.

Reversed.

McNAMARA, WOODWARD, and CALVO, JJ., concur.

JUSTICE McCULLOUGH, dissenting:

As stated in the majority opinion, the Commission certainly has the prerogative to resolve conflicting testimony, to judge the credibility of the witnesses, and to draw inferences from the evidence. The Commission did determine that the inconsistencies in the record undermined the petitioner's credibility and concluded that the petitioner failed to prove that he sustained the alleged injury. This finding of the Industrial Commission is not against the manifest weight of the evidence and should not be disturbed.

The reference to *Jacobson* is inapposite. In *Jacobson,* the claimant's version of the accident was corroborated by the medical records introduced into evidence. He went to the hospital the day after the incident, which was a Sunday, and reported the accident to the employer immediately the Monday following.

The decision of the circuit court confirming the Industrial Commission's decision should be affirmed.