CARY FIRE PROTECTION DISTRICT, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Paul S. Anderson, Appellee).

Second District   No. 2—90—0321WC

Opinion filed April 5, 1991.

Thomas J. Flynn, of Law Offices of Jobin & Flynn, and Mary Pat Butler, of Law Offices of Tyrrell & Flynn, both of Chicago, for appellant.

James A. Campion, Jane A. Busch, and R. Mark Gummerson, all of Holmstrom & Kennedy, of Crystal Lake, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Paul Anderson, a volunteer fireman employed by the Cary Fire Protection District (District), filed a claim for benefits against the District after he was injured while participating in a "water fight" sponsored by the Cary Fireman's Association (Association). The arbitrator awarded benefits. The Industrial Commission (Commission) reversed the decision of the arbitrator. On review, the circuit court of McHenry County set aside the decision of the Commission and reinstated the decision of the arbitrator awarding benefits to the claimant. The District appeals. A summary of the pertinent testimony follows below.

Claimant testified that he is employed by the District as a volunteer fireman, his primary duty being that of engineer, which means he operates the pump unit to supply water to a fire scene. He has a classification as a Firefighter 2, which required him to obtain a certain number of hours in credited courses. There is also continuous training through the District on "drill nights," which are held once per month. Drill nights provide training in specific areas, such as breathing apparatus, ladder climbing or other aspects of fire service work. Seminars to provide information on fire scene work are also provided. Firehose handling training would take place on Lake Julian two or three times per year. The training sessions or practices would consist of shooting

water at barrels. According to claimant, the fire fighters would organize as teams and make a game of it.

Claimant testified that the Association differed from the District in that the Association was made up of the fire fighters in the District, as well as retired fire fighters. The Association was an incorporated organization that had a separate financial system from that of the District. While the District financed the equipment and maintained equipment for use in the District, the Association provided funds for expenditures not allocated for by the District.

Claimant testified further that on September 11, 1982, he participated in a water fight tournament at the McHenry County fairgrounds. He was participating as a member of the District team. Each team in the tournament got a hose and tried to push a barrel past the other team within two minutes of the referee's command. Claimant's team that day consisted of four men who worked with claimant in the District and one man from the Woodstock rural fire department. Claimant's position was nearest to the nozzle. During the match with Woodstock, claimant injured his right leg. Claimant described how he was injured as follows:

"I was anticipating the barrel coming over the wire and across the Court and when it did I anticipated that movement, pulling the line with me and trying to match with that barrel going across the Court and at the end of my push, an extension of my leg, my leg snapped over."

According to claimant, while he was participating in the tournament, he wore a helmet, coat and boots which were furnished to him by the District. He also wore a team shirt, which was paid for by the District. The other equipment, such as hoses, nozzles, engines, etc., was provided by the host team, as were the referees. The equipment used in the water fight tournament was identical to that used to fight a fire. There is a 10-pound difference in the water pressure used due to the different size tip on the hose nozzle.

The Association sponsored such tournaments two times per year at Cary. Teams from several of the surrounding counties were invited to participate. About 12 to 15 Cary firemen participated in the water fight, although the whole department would turn out for the tournament. The Association paid for insurance to cover the spectators. Refreshments were paid for by the Association. No admission fee was charged, though donations could be made, and the donated funds were used to pay expenses for the tournament, and any extra funds would be kept by the Association. A practice was held prior to the tournament at Lake Julian. The Association provided the equipment,

and almost everyone from the fire department participated. It was claimant's understanding that if the practice was held on a drill night, there was insurance coverage for the practice. Each member of the Association was given 10 tickets to sell. Ticket sales earned the Association approximately $350.

Claimant testified further that participating in water fights benefited him in that he was better able to handle the water hose in actual fire fighting and acquired feeling of camaraderie with the other fire fighters that enabled them to function as a team while fighting fires. Water fighting also built up his physical stamina. Mishandling a fire hose can severely injure both persons and property. Contact with firemen from other counties during the tournament aids in situations where different departments are fighting a common fire.

On cross-examination, claimant testified that he was never ordered or compelled by the District to participate in water fighting tournaments. He pays yearly dues of $20 for membership in the Association, which amount is not reimbursed by the District. Claimant did receive water hose training through the District. Claimant further testified that the Association sponsored parties, a Christmas party, a turkey raffle and drawings. The Association also made donations to charity such as the fire victims' fund.

Randall Ray Schlottman testified that he was employed as a fire fighter by the District for seven years beginning 1974-75. While he was employed by the District, he participated in the monthly training sessions held by the Association. The only hands-on training utilizing the fire hoses under pressure was the water fights. According to Schlottman, about three-quarters of the men in the Association participated at one time or another in the water fights. The techniques and equipment used in the water fights were the same as were used in fire fighting. In Schlottman's opinion, participation in the water fights benefited him as it enabled him to know the capabilities of his fellow fire fighters. It was also a good morale booster. Schlottman explained that a mishandled fire hose could cause serious injuries.

On cross-examination, Schlottman testified that participating in the water fighting tournament was voluntary.

Ernest Carlson testified that he is employed by the District as a fire fighter and has been for the past 10 years. His training on the fire hose consisted of participating in the water fights. The equipment and the techniques for water fighting are the same as they are for fire fighting. He had some training as an engineer. The engineer's duties are in some cases the same in water fighting as they are in fire fighting. He felt that water fighting was a good training procedure

because there was no training like actually handling the hose. Water fighting had given him experience in drafting water quickly, and he had trained a few firemen himself on using the engine through water fighting. He recalled one occasion on which the fire chief had said they were going to have a water fight so as to familiarize the new men with the department how to handle the fire hose.

Clifford Anderson, father of the claimant, testified that he has been a volunteer fireman with the District since 1946. He presently holds the position of assistant chief. He participated in water fights from 1946 until three or four years before the arbitration hearing. The equipment and the techniques in water fighting and fire fighting are similar.

Anderson testified that the water fights were held to attract people to activities, such as carnivals, festivals or benefits the Association was working on. Anderson would pass out tickets to each fireman and had information about water fight meets and tournaments printed in newspapers.

According to Anderson, participation in water fights gave individual firemen improved ability to handle and patrol the fire hoses. It also assisted the engineers in drafting and pumping operations. On the whole, water fighting made better firemen.

The arbitrator concluded that claimant's injury arose out of and in the course of his employment. The arbitrator based his conclusions on the fact that all of the claimant's witnesses believed that water fighting was a useful training device "because hose handling techniques were developed and honed, team work was encouraged and morale uplifted." The arbitrator also relied on the fact that the fire chief, who was designated president of the Association, was responsible for training of the firemen and had in essence utilized the Association "as an instrument of his training and education program for the fire fighters."

On review, the Commission reversed the decision of the arbitrator. The Commission found that "notwithstanding that the event [water fighting] might have enhanced the skills of participating fire fighters and the activity was similar to that engaged in at District training drills, *** [claimant] was injured while voluntarily engaging in a recreational program."

The claimant appealed the Commission's decision to the circuit court of McHenry County. The circuit court set aside the Commission's decision and reinstated the decision of the arbitrator. The circuit court found that the Commission's decision denying benefits was against the manifest weight of the evidence because the evidence sup-

ported the arbitrator's finding that the claimant was engaged in a training activity rather than a recreational activity as the Commission had found. The District appeals from the decision of the circuit court.

The sole issue on appeal is whether the decision of the Commission is against the manifest weight of the evidence.

■ Section 11 of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.11) provides in pertinent part as follows:

"Accidental injuries incurred while participating in voluntary recreational programs including but not limited to athletic events, parties and picnics do not arise out of and in the course of the employment even though the employer pays some or all of the cost thereof. This exclusion shall not apply in the event that the injured employee was ordered or assigned by his employer to participate in the program."

It is undisputed that claimant voluntarily participated in the water fighting event in which he was injured. The issue to be resolved here is whether claimant was engaged in a "recreational" program which, under section 11 of the Act, would bar him from receiving compensation for his injury. The term "recreational program" has not previously been defined by our case law, nor is it defined in the Act.

■ ■ The Commission's findings of fact are not to be set aside by a reviewing court unless contrary to the manifest weight of the evidence. (*Law Offices of William W. Schooley v. Industrial Comm'n* (1987), 151 Ill. App. 3d 1069, 1074-75.) Its determinations will not be set aside if they are supported by credible evidence in the record. (*Lyons v. Industrial Comm'n* (1983), 96 Ill. 2d 198, 202.) Even though the facts are undisputed, where such facts permit more than one reasonable inference, then a question of fact is presented, and the conclusion of the Commission on the fact will not be disturbed by a reviewing court unless it is against the manifest weight of the evidence. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1989), 129 Ill. 2d 52, 60.) A reviewing court will not overturn the Commission's findings simply because different inferences could be drawn, or otherwise substitute its judgment for that of the Commission. *Hoegger v. Industrial Comm'n* (1987), 158 Ill. App. 3d 1025, 1029.

The issue presented by this case is whether the claimant was participating in a voluntary recreational activity or program. The determination of this issue presents a factual question. It is undisputed that the claimant was not ordered to participate in the tournament; accordingly, his participation was voluntary. The portion of section 11 of the Act previously set forth clearly excludes voluntary recreational programs even if the employer pays some or all of the cost thereof.

Here, the employer paid none of the cost and did not order or assign the claimant to participate in the program or event in which the claimant was injured. There was evidence that the District and Association were separate entities although sharing many of the same members. The Association rather than the District sponsored the water fighting event. The fire fighters were not compensated for participating in these tournaments.

■ We are of the opinion that the record in this case supports the Commission's finding that, by participating in the water fighting tournament, claimant was engaged in a voluntary recreational activity. Such a determination by the Commission is not against the manifest weight of the evidence. We are bound by the Commission's finding that the claimant was participating in a voluntary recreational activity when he was injured. Thus, the circuit court of McHenry County erred in setting aside the decision of the Commission.

The judgment of the circuit court setting aside the decision of the Commission is reversed, and the decision of the Commission denying benefits to claimant is reinstated.

Judgment reversed; Commission's decision reinstated.

McCULLOUGH, P.J., and McNAMARA, STOUDER, and LEWIS, JJ., concur.