VICTOR DITOLA, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*
(Owens-Illinois Glass, Appellee).

First District (Industrial Commission Division) No. 1—90—2316WC

Opinion filed July 5, 1991.

Orzoff, Shapiro & Locascio, of Northbrook, for appellant.

Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The petitioner, Victor Ditola, brought a workers' compensation claim against the respondent, Owens-Illinois Glass, for knee and back injuries allegedly sustained when he fell in a hole at work. The arbitrator found that the petitioner was entitled to $1^3/7$ weeks of temporary total disability compensation (TTD) and 60 weeks of permanent partial disability compensation for the 30% loss of use of his left knee. The Industrial Commission (Commission) agreed on the TTD, but reduced the permanent partial disability award to 5%. In so ruling, the Commission found the petitioner's automobile accident was the actual cause of most of his knee problems. The circuit court confirmed the Commission. The petitioner appeals.

At the hearing before the arbitrator, the petitioner testified that on December 27, 1982, he was working as a machine repairman for the respondent. As he was using a torch, he pulled on the hose, stepped backwards, and fell into a two-foot-diameter hole. He felt pain in his back and left knee. After some co-employees helped him out of the hole, they had to carry him to the personnel office because his left knee kept giving out. The respondent's personnel called paramedics, who took him to St. James Hospital for emergency treatment.

Medical records from the hospital indicate that the 23-year-old petitioner had a tender sacrum and coccyx, as well as a fracture of the sacrum. Although the petitioner's left knee was examined, the records show no damage to it.

He subsequently received treatment on December 30, 1982, at the Boulevard Medical Clinic for his back and left knee. The doctor prescribed medication and an ice pack. The petitioner returned to the center on January 4 and 10 of 1983. On the later date, the doctor released him to return to work. The petitioner returned to his regular job at that time. Thereafter, he received treatment at the clinic on January 11 and 28, April 4, and May 2. On May 10, 1983, the clinic scheduled him for a June 6 appointment, but he never appeared.

Records from the Boulevard Medical Clinic show that on December 30, 1982, the petitioner had a fracture of the distal end of the sacrum and a left knee contusion. Although he complained of left knee stiffness on January 4, 1983, an examination showed no fracture or other bone changes. Duing his subsequent visits to the clinic, the petitioner complained of left knee pain and popping. In

April, he underwent out-patient physical therapy at St. James Hospital. The Boulevard clinic records from May 2, 1983, the last time the petitioner visited the clinic, show that the knee was no longer giving out.

The petitioner further testified that on May 2, 1983, he visited his family physician, Dr. Schafer, at the Suburban Heights Medical Center, because his knee was not getting any better. His physician told him to continue exercising his knee using ankle weights, as he had previously been doing. The petitioner did not return to the Suburban Heights Medical Center between May 2 and December of 1983. However, during that time, his knee continued "popping out" two to three times per week, at which times he would be unable to walk on it.

On December 13, 1983, the petitioner swerved his car to miss a deer, causing him to hit a street sign. His knee popped loudly as he depressed the clutch while avoiding the deer. After that, he felt considerable pain in his knee and could not stand on it. The petitioner was taken by paramedics to the hospital, where he received emergency treatment. The next day he went to the Suburban Heights Medical Center. On December 15, 1983, he returned to see Dr. D. Narayana, an orthopedic specialist. Dr. Narayana gave him an immobilizer and crutches, and told him not to go back to work, but to go home and lie down.

On January 15, 1984, the petitioner was hospitalized for surgery to his left knee. The hospital records indicate that his knee was injured in the December 13, 1983, accident. However, they also note his statement that he had been having knee problems since falling in the hole at work. Reconstructive surgery was performed on the knee.

Dr. Narayana released the petitioner to return to work on May 21, 1984. In a letter to the respondent, Dr. Narayana stated that the petitioner was doing very well. He noted that his left knee joint was quite strong as of May 14, 1984.

The petitioner stated that at the time of the hearing his left knee still popped out about once a week. Additionally, after a full day of work, his knee would be swollen and his back would hurt. After work he would lie in a hot tub for about an hour and sometimes pack the knee in ice. He still exercised the knee with weights. He noted that prior to falling in the hole at work he had never had any left knee or back problems.

On cross-examination, the petitioner admitted that he had broken his pelvis and left leg in a car accident when he was 15 years

old. He was also in a car accident on April 13, 1981, and cracked a vertebra in his neck. As a result, he was hospitalized for a couple of days. He further acknowledged seeing Dr. Schafer in November and December of 1981, complaining of back pain.

In response to a question from the arbitrator, the petitioner stated that sometime between the December 27, 1982, work accident and May of 1983, one of the respondent's company doctors at Boulevard had told him that if his knee kept popping out he would have to have surgery.

At the time of the hearing, the petitioner was working for Irvin Tractor Rentals as a tractor mechanic.

On September 21, 1984, Dr. Irwin Barnett examined the petitioner at the petitioner's request. He diagnosed the petitioner as suffering from residuals of a lower back injury with slight bilateral sciatic nerve root irritation; a fracture of the distal sacrum; and residuals of soft tissue, ligamentous, and cartilage injury of the left knee. He noted some restriction of motion in the lumbar spine and the left knee joint.

At the respondent's request, Dr. Richard Shermer examined the petitioner on October 2, 1986. Dr. Shermer found that the petitioner had excellent function and range of motion of the lower back and left knee.

The arbitrator found that on December 27, 1982, the petitioner had sustained accidental injuries arising out of and in the course of his employment with the respondent. He awarded the petitioner $1^3/_7$ weeks of TTD, that being the time he was off work for that injury. The arbitrator further found that the petitioner had suffered a 30% permanent partial loss of use of his left leg and therefore awarded him 60 weeks' compensation. Although the arbitrator's reasoning is not entirely clear, he also apparently determined that the petitioner had failed to prove a causal connection between his work injury and his condition of ill-being after January 10, 1983. He therefore awarded him no compensation for that time.

The Commission affirmed the TTD award and agreed with the arbitrator that the December 13, 1983, accident was an intervening cause. It further found, however, that the evidence did not justify a finding that a 30% loss of use of the left leg existed prior to the auto accident. It concluded that the work accident was only responsible for a 5% loss of use of the left leg. It therefore reduced the permanent partial disability award to 10 weeks' compensation. The circuit court confirmed the Commission's decision.

On appeal, the petitioner initially argues that the Commission's

causality finding was against the manifest weight of the evidence. Specifically, he contends that the evidence showed that a causal connection existed between his December 27, 1982, work accident and his condition of ill-being at the time of the arbitration hearing. Relying on *International Harvester Co. v. Industrial Comm'n* (1970), 46 Ill. 2d 238, 263 N.E.2d 49, he argues that the December 13, 1983, knee injury would not have occurred "but for" the knee damage already existing from the work injury.

 We note that it is the Commission's responsibility to determine the existence of a causal connection between an industrial accident and the claimant's injuries. (*Steiner v. Industrial Comm'n* (1984), 101 Ill. 2d 257, 461 N.E.2d 1363.) Further, it is within the province of the Commission to judge the credibility of the witnesses, weigh their testimony, and determine what weight to give the evidence. (*Anderson Clayton Foods v. Industrial Comm'n* (1988), 171 Ill. App. 3d 457, 526 N.E.2d 844.) Accordingly, the Commission's decision on a question of fact will not be disturbed unless it is contrary to the manifest weight of the evidence. *Newgard v. Industrial Comm'n* (1974), 58 Ill. 2d 164, 317 N.E.2d 524.

Here, the petitioner returned to work on January 10, 1983, and sought no further medical treatment for his knee between May 2, 1983, and December 13, 1983. Though he claimed that he continued suffering knee problems during that time, the Commission was not obligated to believe him and could reasonably conclude from the medical evidence that the condition of his knee had stabilized at 5% loss of use. As such, the sudden worsening of his condition upon his accident could properly be attributed to the accident, rather than to lingering knee problems. Based on the evidence, we find that the Commission's causality determination was not against the manifest weight of the evidence.

 In so finding, we note that, contrary to the petitioner's contention in his brief, there is no conflict between this decision and *International Harvester*. Causality is a factual question for the Commission to determine, and the facts of this case are considerably different from those found in *International Harvester*. Further, in *International Harvester* the supreme court was merely affirming the Commission's factual finding that there was a causal connection.

 The petitioner also argues that the circuit court erred in failing to award him TTD for the work time he lost between December 13, 1983, and May 20, 1984. Additionally, he contends that he is entitled to compensation for the 70% loss of use of his left leg

and the 6% loss of use of the man as a whole due to his back injury.

We note that the TTD argument is entirely dependent upon this court finding that the auto accident was not the cause of the petitioner's knee problems after December 13, 1983. Having affirmed the Commission's finding that the car accident broke the causal chain, we find no merit to the petitioner's claim that he deserved TTD after December 13.

■ Regarding the extent of the knee injury and any back injury, the petitioner arguably could be entitled to more compensation based only on the condition of his knee and back following the work injury. However, it was the Commission's function to determine the extent of the injury (*Crane v. Industrial Comm'n* (1974), 57 Ill. 2d 158, 311 N.E.2d 156), and we find that its decision was not against the manifest weight of the evidence. The petitioner was only off work a short time, and the medical reports indicated little, if any, damage to the knee. Similarly, the medical evidence supports the Commission's conclusion that there was no permanent damage to the petitioner's back.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and McNAMARA, LEWIS, and WOODWARD, JJ., concur.