JEAN WEEKLEY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (MidCon Corporation, Appellee).

Second District (Industrial Commission Division)   No. 2—92—0691WC

Opinion filed June 9, 1993.

Michael D. Block and Gary S. Pyles, both of Block, Krockey, Cernugel & Cowgill, P.C., of Joliet, for appellant.

Susan M. Mongillo, of Ross & Hardies, of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Jean S. Weekley, appeals from the judgment of the circuit court of Du Page County denying benefits under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). Claimant had sought benefits for alleged chemical exposure at her workplace, MidCon Corporation (MidCon), which the arbitrator denied on the grounds claimant failed to establish that she was exposed to the hazards of an occupational disease or that she was injured as a result of an accident arising out of and in the course of her employment. The Industrial Commission (Commission) affirmed the arbitrator's decision, and the circuit court confirmed the Commission's decision. Claimant argues on appeal that the denial of benefits is against the manifest weight of the evidence and that the Commission erred in excluding the opinion and testimony of one of her medical experts. We affirm.

At the hearing before the arbitrator, claimant testified she worked for MidCon as an executive secretary in the public communications department at MidCon's corporate headquarters from May 14, 1984, to September 12, 1986. Claimant's work station consisted of a 5-foot by 8-foot open cubicle constructed of fabric panels. Claimant testified that beginning with the third day of working for MidCon she felt nauseous and weak. She soon began experiencing dizziness, light-headedness, right facial pain and hot flashes. Claimant stated she would be fine in the morning but would feel ill by the end of the day. She also felt better on weekends. Claimant sought treatment from numerous doctors and dentists while continuing to work for MidCon, but found little relief.

In the first week of April 1986, MidCon started a remodeling project near claimant's work station involving painting, hanging wallpaper, and laying carpet tiles. Once the work began, claimant testified her tongue became swollen, her lips blistered, and her voice disappeared. She further experienced nausea, dizziness, and disorientation. Some of her co-workers also suffered temporary physical reactions to the fumes the first days of remodeling. Claimant, however, asserted she did not recover and is now permanently hypersensitive to chemical fumes and odors everywhere, including in her own home. As a result of the remodeling, claimant missed the next two days of work and had to leave early the next four days. She did not work at all from April 15 to July 7, 1986. When she returned to work in July, she continued to suffer numerous difficulties and eventually stopped working altogether in September. Claimant now has reactions to perfumes, auto fumes, gasoline, natural gas, cigarette smoke, newspapers, hair spray, room deodorizers, fabric softeners, nail polish and remover, and dust. Claimant further testified that prior to going to work for MidCon her medical history had been good, a fact confirmed by her preemployment physical. Once the remodeling project commenced, claimant sought help from two clinical ecologists. The ecologists put her on a detoxification diet and injected her with heavy doses of vitamins. Claimant eventually was diagnosed with an impaired immune function and secondary allergies and conditions including chemical sensitivities. Medical records, however, revealed claimant had many of the same symptoms of which she now complains prior to her employment with MidCon. The medical records also reveal that prior to employment with MidCon, claimant had had a tonsillectomy, appendectomy, colostomy, hysterectomy and thoracic outlet syndrome surgery.

MidCon's building manager reported the remodeling work in claimant's area lasted approximately two weeks, and the entire project on her floor was completed by May 25, 1986. Most of the work was done on weekends and after hours. He also explained that each floor of MidCon's headquarters has two independently operated air-handling zones as part of the building's ventilation system which generate air exchange for the building 10 times an hour. Both on claimant's floor were working properly during the time of remodeling. Results of an OSHA investigation conducted in September 1986 revealed no evidence of chemical toxins or exposure.

At the request of her attorney, claimant saw Dr. Luskin, an associate professor and doctor specializing in immunology. After examining claimant and reviewing various immunologic test results, Dr. Luskin concluded that claimant had a suppressed immune system and

that there was a causal connection between her condition and the exposure she suffered at work. Dr. Luskin admitted, however, that there is no scientific test to determine whether a chemical is causing an immune suppression and that he was not aware of any immunologic condition which has as its symptoms the complex of symptoms claimant professed to have. Dr. Luskin further expressed his opinion that the methods and theories of clinical ecologists lack scientific and medical validity.

Claimant also saw a psychologist, Dr. Garron, at the request of her attorney. Dr. Garron concluded claimant was not suffering from a psychological condition. MidCon's expert, however, disagreed. Dr. Chrisann Schiro-Geist opined claimant suffered from either a somatization disorder or an atypical somatoform disorder. She explained how claimant fit very well within the somatoform disorder classification with her long-standing problems with a variety of body systems. As an individual with this type of condition ages, the symptomology becomes more entrenched, and eventually the patient will pick an incident and attribute all symptoms to that event in an effort to find a cause for all of the problems. Dr. Geist concluded claimant's condition, generally genetic in origin, was not caused by her work environment.

MidCon's other expert, Dr. Leslie Grammer, an allergist, immunologist and chief of the occupational medicine section of Northwestern University Medical School, also opined claimant had no immunologic condition of ill-being. After examining claimant, evaluating her immunologic test results, reviewing the medical records of claimant's numerous doctors and dentists and reviewing the material safety data sheets regarding materials used in the remodeling project, Dr. Grammer concluded claimant's symptoms were not a result of chemical exposure in the workplace. Dr. Grammer specifically noted claimant's symptoms were not consistent with any possible reactions to toxic levels of ingredients of the materials used in the remodeling of MidCon's headquarters.

It is well established that it is the province of the Commission to decide questions of fact and causation. (*Caterpillar, Inc. v. Industrial Comm'n* (1992), 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896; *Cary Fire Protection District v. Industrial Comm'n* (1991), 211 Ill. App. 3d 20, 25, 569 N.E.2d 1338, 1342.) It is also well established that it is the function of the Commission to judge the credibility of witnesses and to resolve conflicting medical evidence. (*Caterpillar, Inc.*, 228 Ill. App. 3d at 291, 591 N.E.2d at 896; *Ditola v. Industrial Comm'n* (1991), 216 Ill. App. 3d 531, 535, 576 N.E.2d 379, 382; *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442, 559 N.E.2d

1034, 1037.) We, as a reviewing court, cannot reject reasonable inferences made by the Commission merely because we might have drawn different ones from the evidence had that task been ours. Only if the Commission's findings are contrary to the manifest weight of the evidence may we overturn the Commission's determinations. (*Cary Fire Protection District*, 211 Ill. App. 3d at 25, 569 N.E.2d at 1342; *Dexheimer*, 202 Ill. App. 3d at 443, 559 N.E.2d at 1037; *Pryor v. Industrial Comm'n* (1990), 201 Ill. App. 3d 1, 5, 558 N.E.2d 788, 791.) In light of these governing principles, we cannot say the Commission's decision is against the manifest weight of the evidence in this instance.

■ First, claimant failed to establish any connection between her symptomatology and the materials used in the remodeling project. To the contrary, much of the evidence in the record reveals claimant's symptoms are long term in nature, many occurring prior to her employment at MidCon. Some are also attributable to other causes and places. It is true a few of claimant's fellow employees also experienced minor discomfort when the remodeling project initially began, but their symptoms did not match those of claimant and were temporary in nature. Moreover, claimant experienced the same symptoms outside the workplace away from the chemical fumes and odors associated with the remodeling. Additionally, Dr. Grammer specifically stated claimant's symptoms were not consistent with any possible reaction to toxic levels of the ingredients used in the remodeling materials.

Second, even assuming claimant had some sort of preexisting condition which allegedly was aggravated by MidCon's remodeling, claimant still is not entitled to benefits. Claimant did not establish any type of risk in her work environment greater than that to which the general public is exposed. (See *Pryor*, 201 Ill. App. 3d at 5, 558 N.E.2d at 791. See also *Johns-Manville Products Corp. v. Industrial Comm'n* (1979), 78 Ill. 2d 171, 177-78, 399 N.E.2d 606, 609-10.) The OSHA test results revealed no evidence of chemical toxins or exposure at MidCon's headquarters. And, as previously noted, claimant experienced many of her symptoms outside the workplace.

Third, claimant also failed to establish her condition resulted from either the remodeling project or the environment in general at MidCon. While she claims she was in good health prior to her employment with MidCon, claimant, in fact, suffered from many of the same problems for many years prior to and away from MidCon. (*Cf. Leason v. Industrial Comm'n* (1973), 55 Ill. 2d 486, 493-94, 303 N.E.2d 414, 418-19; *Burrell v. Industrial Comm'n* (1988), 171 Ill. App. 3d 723,

729, 525 N.E.2d 935, 940.) Even claimant's own expert, Dr. Luskin, could not find any immunologic condition which had as its symptoms the complex of symptoms claimant professed to have.

The burden rests on claimant to establish she is suffering from a condition of ill-being caused by or related to her employment. (*Rockford Transit Corp. v. Industrial Comm'n* (1967), 38 Ill. 2d 111, 114-15, 230 N.E.2d 264, 265; *Byrd v. Industrial Comm'n* (1965), 33 Ill. 2d 115, 117, 210 N.E.2d 535, 537.) The Commission concluded claimant failed to carry her burden. We cannot find otherwise. A mere possibility that claimant may have become afflicted with a condition of ill-being in the course of her employment with MidCon (whatever label she may attach to it) is not sufficient to support an award of compensation. (*Byrd*, 33 Ill. 2d at 118, 210 N.E.2d at 537.) Even were we to recognize the possibility of a link between claimant's employment and a psychological condition, we still must affirm the Commission's denial of benefits. Claims for nontraumatic psychic injury cannot depend solely upon the peculiar vicissitudes of the individual employee as he or she relates to his or her general work environment. *General Motors Parts Division v. Industrial Comm'n* (1988), 168 Ill. App. 3d 678, 687, 522 N.E.2d 1260, 1266. See also *Chicago Board of Education v. Industrial Comm'n* (1988), 169 Ill. App. 3d 459, 468, 523 N.E.2d 912, 918.

As her second argument on appeal, claimant contends the Commission improperly excluded the testimony of one of her experts, Dr. Jeffrey Coe. Claimant retained the services of Dr. Coe, a physician specializing in occupational medicine, after the arbitrator denied her claim for benefits. Dr. Coe diagnosed claimant as suffering from "sick building syndrome" and multiple chemical sensitivities. In his report and deposition, Dr. Coe noted and testified extensively as to causation, citing several authoritative sources. MidCon objected to Dr. Coe's testimony on the grounds it far exceeded the allowable scope of evidence on review as provided by Illinois Industrial Commission Rule 7040 and attempted to bring in certain occupational medicine publications as substantive evidence. The Commission excluded the publications and limited Dr. Coe's testimony to his findings as to claimant's medical condition at the time of examining her.

■ Turning to the matter of the authoritative sources first, the law is clear that publications which do not constitute treatises may not be offered as substantive evidence. (See *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 258, 381 N.E.2d 279, 283; *Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 54, 463 N.E.2d 216, 226. See also *Fornoff v. Parke Davis & Co.* (1982), 105 Ill. App. 3d 681,

690-91, 434 N.E.2d 793, 801 (treatises in general also not admissible as substantive evidence).) Moreover, an expert witness, in testifying, may not summarize findings of studies in medical literature, nor may he read from such articles, although he may use them as a basis for his opinion. (*Schuchman v. Stackable* (1990), 198 Ill. App. 3d 209, 230, 555 N.E.2d 1012, 1025-26; *Mielke*, 124 Ill. App. 3d at 54, 463 N.E.2d at 226.) The publications involved here were not treatises; consequently, the Commission properly excluded them from evidence.

As for the limitation of Dr. Coe's testimony, under Rule 7040, as it existed at the time of claimant's hearing, a party could not introduce new evidence on review for purposes of relitigating the issues. Rule 7040 only permitted evidence to be adduced on review if it: (1) related to the condition of the claimant since the time of the arbitration hearing; (2) related to matters occurring after the arbitration hearing; or (3) was not introduced at the arbitration hearing for good cause. (50 Ill. Adm. Code §7040.40(b) (1985); *Werries v. Industrial Comm'n* (1986), 114 Ill. 2d 43, 48, 499 N.E.2d 459, 461.) By statute, effective December 18, 1989, no additional evidence can be introduced before the Commission on review of an arbitrator's decision. (Ill. Rev. Stat. 1989, ch. 48, par. 138.19(e).) Some of the material relied on by Dr. Coe was not published until after the arbitration hearing, but the syndromes covered therein had been recognized throughout the 1980's. No good cause therefore existed for not presenting such information prior to the arbitration hearing. As a result, the only evidence admissible under Rule 7040 was the update of claimant's condition. The Commission did not err in restricting Dr. Coe's testimony.

For the aforementioned reasons, we affirm the decision of the circuit court of Du Page County confirming the Industrial Commission's decision denying claimant benefits.

Affirmed.

McCULLOUGH, P.J., RAKOWSKI, WOODWARD and Mc-CUSKEY, JJ., concur.