ELMHURST PARK DISTRICT, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Sean T. Murphy, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—08—2289WC

Opinion filed October 6, 2009.—Rehearing denied December 3, 2009.

Nyhan, Bambrick, Kinzie & Lowry, of Chicago, for appellant.

Cronin, Peters & Cook, of Chicago, for appellee.

JUSTICE HUDSON delivered the opinion of the court:

Claimant, Sean T. Murphy, worked at a fitness facility operated by respondent, Elmhurst Park District. On January 3, 2002, claimant injured his right leg while playing in a wallyball[1] game on respondent's premises during his work shift. Claimant sought benefits for his injury pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2002)). Respondent asserted that claimant's injury was not compensable by virtue of section 11 of the Act (820 ILCS 305/11 (West 2002)), which precludes an employee from recovering for accidental injuries incurred while participating in "voluntary recreational programs" unless the employee was ordered or assigned by the employer to participate in the activity. The arbitrator awarded claimant benefits, finding that his injury arose out of and in the course of his employment with respondent. The arbitrator found that section 11 did not apply because claimant's participation in the wallyball game did not constitute a "voluntary recreational activity" as contemplated by section 11. The Illinois Workers' Compensation Commission (Commission) affirmed the decision of the arbitrator, and the circuit court of Cook County confirmed. On appeal, respondent contends that, despite the Commission's conclusion to the contrary, claimant was not entitled to benefits because his participation in the wallyball game was "voluntary," the wallyball game constituted a "recreational" activity, and respondent did not order or assign claimant to participate in the activity. See 820 ILCS 305/11 (West 2002). We find respondent's position unpersuasive and therefore affirm.

Claimant was hired by respondent as a fitness supervisor late in 2001. Claimant testified that in this capacity one of his duties was to promote and implement the classes and programs that respondent offered its patrons. Claimant explained that promoting respondent's programs involved "help[ing] out with any of the programs or classes along with helping the members and customers." A copy of claimant's written job description was placed into evidence.

Regarding the events of January 3, 2002, claimant testified that he was scheduled to work from noon until 8:30 p.m. At approximately 7:30 p.m. that day, Denise McElroy, a coworker, approached claimant

---

[1]Wallyball is a team sport similar to volleyball, but which is played within the confines of a racquetball court. See American Wallyball Association, http://www.wallyball.com (last visited September 22, 2009).

and asked him to participate in a wallyball game. McElroy was not claimant's supervisor, and she was off duty on the evening of January 3. Claimant testified that the game in question was part of respondent's wallyball league and that the participants were paying customers. Although claimant was a regular member of the wallyball league, he declined McElroy's invitation because he did not feel well and he had other work to do. According to claimant, however, McElroy persisted. She told him that without his assistance the game could not go forward "because they didn't have enough people to participate." At that point, claimant ceded to McElroy's "cajoling" and decided to "oblige" and "help[ ] out." At about 7:45 p.m., 15 minutes after the game commenced, claimant jumped up to block a shot. When he came down, he injured his right leg. Claimant was transported by ambulance to Elmhurst Memorial Hospital, where he underwent surgery to repair a fracture. With the aid of crutches, claimant was able to return to his position as fitness supervisor on February 24, 2002.

Claimant testified that he was not aware of any policy prohibiting park district employees from participating in league play while on duty and that he was not reprimanded by respondent for his participation in the wallyball game. In fact, claimant stated that he had played wallyball during working hours on at least three occasions prior to January 3, 2002. Claimant explained that on those occasions he would begin a game prior to the end of his shift and finish the game after the end of his shift. Claimant acknowledged that no one told him that it was mandatory for him to participate in the wallyball game on the evening in question. Nevertheless, he stated that he "felt that [it] was part of [his] job," which was "to promote *** different classes and programs."

Claimant's supervisor, Pamela Stoike, testified that in January 2002 she was employed by respondent as the manager of fitness and racquet sports at the facility where claimant worked. Stoike testified that the wallyball program is administered as part of the racquet sports department. Stoike explained that the fitness department and the racquet sports department are separate, that each department has its own "sub supervisor," and that claimant had no duties with respect to the racquet sports department. Stoike further testified that wallyball was not within claimant's responsibilities and that she, as claimant's supervisor, never ordered or directed claimant to play or participate in any wallyball league. Stoike added that McElroy did not have any supervisory duties over claimant and that claimant did not have any responsibilities regarding the formation of wallyball teams or the promotion of the sport. In fact, Stoike testified that although respondent encouraged its employees to participate in sports leagues

on their own time, it had a policy prohibiting employees from playing while they were on duty.

Based on the foregoing evidence, the arbitrator concluded that claimant's injury arose out of and in the course of his employment with respondent. The arbitrator found that section 11 of the Act (820 ILCS 305/11 (West 2002)) did not apply because claimant was not participating in a "recreational" activity but rather was performing duties incidental to his employment. The arbitrator explained that claimant was injured during an activity that "was part of the respondent's business, and therefore part of the [claimant's] overall job duties." The arbitrator stated that without claimant's participation, the wallyball game would not have been played and respondent's customers would not have been accommodated. Moreover, the arbitrator noted that claimant felt "compelled" to participate based on his written job description, which provided that claimant's responsibilities included "[p]romot[ing] *** programs to patrons, members, guests and staff," "[d]evelop[ing] and maintain[ing] positive customer service," and "[b]e[ing] available for flexible work schedules." The arbitrator added that the fact that an employee's work duties involve an activity that is "recreational" to the employer's customers does not make the activity "recreational" to the employee involved in it. The arbitrator concluded that since claimant's participation in the wallyball game "clearly benefited the respondent's business of operating a health facility and the [claimant] reasonably believed the activity was part of his work duties," claimant was not engaged in a "voluntary recreational" activity. The arbitrator awarded claimant $7^2/_7$ weeks of temporary total disability benefits (see 820 ILCS 305/8(b) (West 2002)) and 50 weeks of permanent partial disability benefits, representing 25% loss of use of the right leg (see 820 ILCS 305/8(e) (West 2002)). As noted above, the Commission affirmed and adopted the decision of the arbitrator and the circuit court of Cook County confirmed. This appeal followed.

An injury is compensable under the Act only if the claimant proves by a preponderance of the evidence that it arose out of and in the course of his or her employment. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203 (2003). An injury is said to "arise out of" one's employment if its origin is in some risk connected with, or incidental to, the employment so that there is a causal connection between the employment and the accidental injury. *Technical Tape Corp. v. Industrial Comm'n*, 58 Ill. 2d 226, 230 (1974). An injury is "in the course of" employment when it occurs within the period of employment at a place where the employee can reasonably be expected to be in the performance of his or her duties and while he or she is perform-

ing these duties or a task incidental thereto. *All Steel, Inc. v. Industrial Comm'n*, 221 Ill. App. 3d 501, 503 (1991).

■ On appeal, respondent does not expressly dispute that claimant has established the foregoing elements. Rather, respondent asserts that claimant is precluded from recovering benefits by virtue of the voluntary-recreational activity exclusion set forth in section 11 of the Act (820 ILCS 305/11 (West 2002)). That section provides in relevant part:

> "Accidental injuries incurred while participating in voluntary recreational programs including but not limited to athletic events, parties and picnics do not arise out of and in the course of the employment even though the employer pays some or all of the cost thereof. This exclusion shall not apply in the event that the injured employee was ordered or assigned by his employer to participate in the program." 820 ILCS 305/11 (West 2002).

The parties do not suggest that claimant's participation in the wallyball game was not "voluntary." Instead, they focus on whether the nature of the activity in which claimant was engaged at the time of his injury was "recreational." According to respondent, the plain and unambiguous language of section 11 was meant to apply in instances such as this where an employee is injured while engaged in an activity such as wallyball, which is an "athletic event." Claimant counters that section 11 was not intended to bar compensation where, as here, the injury occurs within the period of employment and while the employee is participating in an activity that is "incidental" to the performance of his or her duties.

To determine whether the exclusion set forth in section 11 precludes claimant from recovering benefits, we must determine what the legislature intended by the use of the word "recreational." The interpretation of a statute is a question of law subject to *de novo* review. *City of Chicago v. Illinois Workers' Compensation Comm'n*, 387 Ill. App. 3d 276, 278 (2008). In interpreting a statute, our primary goal is to ascertain and give effect to the intent of the legislature. *Ming Auto Body/Ming of Decatur, Inc. v. Industrial Comm'n*, 387 Ill. App. 3d 244, 253 (2008). The best indication of legislative intent is the plain and ordinary language of the statute itself. *Piasa Motor Fuels v. Industrial Comm'n*, 368 Ill. App. 3d 1197, 1203 (2006). Moreover, because the provisions of a statutory enactment are to be viewed as a whole, a court may also consider the principle purpose of the statute in ascertaining the legislative intent. See *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002).

Although section 11 provides several general examples of activities which may be considered "recreational," the Act does not expressly

define the term. See *Cary Fire Protection District v. Industrial Comm'n*, 211 Ill. App. 3d 20, 25 (1991). Absent statutory definitions indicating a different legislative intention, courts will assume that words have their ordinary and popularly understood meanings. *General Motors Corp., Fisher Body Division v. Industrial Comm'n*, 62 Ill. 2d 106, 112 (1975). In determining the ordinary meaning of a statutory term, it is appropriate to consult a dictionary. *People v. Perry*, 224 Ill. 2d 312, 330 (2007). The term "recreational" is derived from the word "recreation." Webster's Third New International Dictionary 1899 (2002). The word "recreation" in turn is defined as "the act of recreating or the state of being recreated: refreshment of the strength and spirits after toil: DIVERSION, PLAY." Webster's Third New International Dictionary 1899 (2002).

■ Given the foregoing definition, we can certainly envision circumstances under which participation in a game of wallyball would constitute a "recreational" activity and therefore fall within the voluntary-recreational activity exclusion set forth in section 11 of the Act. However, we do not believe that the facts of this case present such a situation. Similar to a professional athlete, "recreation" is inherent in claimant's position as a fitness supervisor. See 2 A. Larson & L. Larson, Worker's Compensation Law §22.04[1][b], at 22-12 through 22-16 (2007) ("The clearest possible example of 'recreation' which is the essence of the job itself is that of professional sports"). As such, we find it appropriate to consider why claimant agreed to play wallyball on the date he was injured. The evidence adduced at the arbitration hearing established that claimant initially declined McElroy's invitation to participate in the wallyball game because he was not feeling well and he had other work to do. However, McElroy persisted in her request and told claimant that absent his participation, the game would be cancelled because there would not be enough participants. Thereafter, claimant decided to "help[ ] out" because he "felt that [it] was part of [his] job," which was "to promote *** different classes and programs." Based on this evidence, we conclude that claimant did not participate in the wallyball game for his own "diversion" or to "refresh" or "strengthen" his spirits after toil. Rather, claimant participated in the game to accommodate respondent's customers. As such, we find that claimant was not engaged in a "recreational" activity as contemplated by section 11 of the Act at the time of his injury.

Our finding is further buttressed by the Commission's determination that claimant's participation in the wallyball game was incidental to his employment. Respondent asserts that claimant's duties centered on the fitness department and his supervisor testified that none of his

duties involved racquet sports, the department which encompasses the wallyball program. However, according to claimant's written job description, his responsibilities included "[p]romot[ing] *Elmhurst Park District* programs." (Emphasis added.) This clearly does not limit claimant to promoting only fitness-department programs. Similarly, claimant was required to "[d]evelop and maintain positive customer service with *internal and external* customers." (Emphasis added.) Again, this responsibility does not restrict claimant from attending to customers outside of the fitness department. Indeed, as we noted previously, claimant testified that he felt that participating in the wallyball game was part of his job because one of the requirements of his position was to help out with any programs or classes respondent offered its patrons. Claimant's belief was reasonable in light of his written job description. Therefore, the evidence supports the Commission's finding that claimant's participation in the wallyball game was incidental to his employment.

Furthermore, we reject the suggestion that claimant's injury is not compensable because respondent had a policy prohibiting employees from playing league sports while they were on duty. Claimant's supervisor testified to such a policy. However, if the policy existed, the evidence presented at the arbitration hearing suggested that it was not enforced. See *County of Cook v. Industrial Comm'n*, 177 Ill. App. 3d 264, 272 (1988) ("[A]n employee may be entitled to compensation even though he may have violated a rule of his employer, especially where that rule was unenforced"). Claimant testified that he was not aware of any such policy and, in fact, that he had played wallyball during working hours on at least three occasions during his short tenure with respondent prior to the date of his injury. Moreover, claimant stated that he was not reprimanded by respondent for his participation in the wallyball game on January 3, 2002. For all these reasons, we affirm the Commission's finding that the voluntary-recreational activity exclusion did not render claimant's injury noncompensable.

Citing to *Kozak v. Industrial Comm'n*, 219 Ill. App. 3d 629 (1991), respondent vigorously asserts that wallyball is clearly an "athletic event" and therefore claimant's injury is not compensable. In *Kozak*, the employee suffered a fatal heart attack while participating in a tennis round-robin tournament conducted for the purpose of selecting a tennis team to represent the employer in a national invitational championship. *Kozak*, 219 Ill. App. 3d at 630. The petitioners, the decedent's widow and son, thereafter sought benefits under the Act. In upholding the Commission's decision to deny compensation, we stated that " 'section 11 applies if an employee is injured while

participating in a voluntary activity regardless of the purpose of the activity.' " *Kozak*, 219 Ill. App. 3d at 632. Further, we cited two reasons for declining the petitioners' request to define "recreational activities" beyond the description contained in section 11 of the Act:

> "In the first instance, it is absolutely clear in the case before us that participation in a round-robin elimination tennis tournament is an 'athletic event' within the meaning of the Act. Second, any additional explication of the possible types of conduct which may be within or without the Act would be, at best, *dicta* and, at worst, an impermissible advisory opinion in which this court may not engage." *Kozak*, 219 Ill. App. 3d at 633-34.

While our decision in this case may, at first blush, seem antithetical to *Kozak*, a closer examination reveals that the two cases are distinguishable.

As noted above, "recreation" is inherent in claimant's job. Therefore, almost any activity in which claimant takes part could be considered "recreational." For this reason, it is necessary to consider the purpose of claimant's participation in the wallyball game. In *Kozak*, there was no evidence that "recreation" was inherent in the employee's position. Therefore, under our analysis in this case, the result in *Kozak* would be the same. The evidence in *Kozak* indicates that the sole reason for the employee's participation in the tennis tournament was for his own "diversion." As part of the tennis competition, the employee in *Kozak* was flown to Texas and the employer paid all of the travel expenses. *Kozak*, 219 Ill. App. 3d at 631. Further, had the employee won the tournament, he would have received a trophy and an all-expense paid vacation. *Kozak*, 219 Ill. App. 3d at 630. Accordingly, we find respondent's reliance on *Kozak* misplaced.

In sum, we affirm the judgment of the circuit court of Cook County, which confirmed the decision of the Commission.

Affirmed.

McCULLOUGH, P.J., and HOFFMAN, HOLDRIDGE, and DONOVAN, JJ., concur.